**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT E.D.N.Y.
JUN 02 2008
BROOKLYN OFFICE

*B H 5 L*

Yuri Kuklachev, Dmitri Kuklachev,

Plaintiffs,

- against -

Mark Gelfman, Gelfman International
Enterprises, Inc., Tribeca Performing Arts Center,
Ticketmaster.com, Palace of Fine Arts, Wilkins
Theatre at Kean University , Onlineseats.com ,
Yanis Gelfman, Vladimir Krasnolozhkin,
Vladimir Anisimov, Dmitry Krassotkine, John
Hancock Hall, Gwinnett Center, Napa Valley
Opera House, LA's Wilshire Ebell's Theatre,
Seattle Repertory Theatre, Yuri Pototski, Michael
Zlotnikov, Andrey Yankovis, Stanislav Nemoy,
JOHN DOES 1-100, COMPANIES A-Z
……

Defendants.

Index No.:

**08 2214**

COMPLAINT FOR TRADEMARK
INFRINGEMENT, UNFAIR
COMPETITION, FALSE DESIGNATION
OF ORIGIN, FALSE ENDORSEMENT,
DILUTION OF A FAMOUS
TRADEMARK, CYBER-SQUATTING,
VIOLATIONS OF RIGHTS OF
PUBLICITY AND PRIVACY, FRAUD,
CONVERSION, PRIMA FACIE TORT
AND UNJUST ENRICHMENT

DEMAND FOR A JURY TRIAL

SIFTON, J

POHORELSKY, M.J.

Plaintiffs, Yuri Kuklachev and Dmitri Kuklachev (the "Kuklachevs"), bring their complaint

against Defendants Mark Gelfman ("M. Gelfman"), Gelfman International Enterprises, Inc.

("Gelfman Corporation"), Tribeca Performing Arts Center "(Tribeca"), Ticketmaster,

onlineseats.com, Yanis Gelfman ("Y. Gelfman"), Vladimir Krasnolozhkin ("Krasnolozhkin"),

Vladimir Anisimov, Dmitry Krassotkine, John Hancock Hall, Gwinnett Center, Napa Valley

Opera House, Palace of Fine Arts, Wilkins Theatre at Kean University, LA's Wilshire Ebell's

Theatre, Yuri Pototski, Michael Zlotnikov, Andrey Yankovis, Stanislav Nemoy, JOHN DOES 1-

100, CORPORATIONS A-Z (collectively, the "Defendants"). Kuklachevs assert claims of

federal and common law trademark infringement, false endorsement, unfair competition, false

designation of origin, dilution of a famous trademark, and violations of anti-cybersquatting law,

rights of publicity and privacy, fraud, conversion, prima facie tort and unjust enrichment. In

support of which, Kuklachevs allege as follows:

## NATURE OF THE ACTION

1. Kuklachevs bring this action for injunctive relief and damages as a result of Defendants' unauthorized use and exploitation of the Kuklachevs' and their theater's - "Moscow Cats Theatre"s – name, famous trademarks, images, likeness, performance contents and persona, as well as conversion and the use of the Internet domain name, "moscowcatstheatre" (the "Domain Name").

2. Defendants have misappropriated and exploited Kuklachevs' marks, name and likeness and their theater's name and likeness without Kuklachev's authorization for the Defendants' commercial profit, to the harm and diminishment of Kuklachevs' rights to control the commercial use of their name and image and their theater's name, image and the theater's performance contents. The name of the Defendants' show is misleading; the use of Kuklachevs' name and/or likeness in the Defendants' show, advertising and other materials is likely to confuse and mislead consumers into believing that the show and the promotional material are endorsed and/or approved by Kuklachevs. By these actions, Defendants seek to trade off and profit from the goodwill associated with Kuklachevs' celebrity status for Defendants' own profit.

3. Kuklachevs, through their attorneys, sent Defendants "cease and desist" letters warning them of Kuklachevs' objections to the use of their name and image in the shows, and to the use of their theater's name and show contents. Defendants Tribeca, Mark Gelfman and Gelfman Enterprises, Inc. rejected all of Kuklachev's demands.

4. Kuklachevs accordingly seek relief from this Court, including a preliminary and permanent injunction enjoining Defendants from using Plaintiffs' trademarks, service marks, names and likeness, and from using Plaintiffs theater's name and image and the contents of their shows for

commercial purposes and/or the use of the Domain Name without Plaintiffs' consent, and from misleading Plaintiffs' fans and the public through the use of Kuklachevs' trademarks, names, likeness and the names and likeness of Kuklachevs' theater and show contents.

## INTRODUCTION

5. Kuklachevs are world-famous clowns, whose names are household names in many countries and among cat-lovers worldwide.  Through the use of proprietary animal training methods, developed by Yuri Kuklachev, Plaintiffs became widely recognized as the world's first performers to successfully train and perform tricks with such notoriously stubborn animals as cats.

6. Plaintiffs are the recipients of some of the world's and America's most prestigious performance awards. Plaintiffs are the founders of the world's first and only, widely popular, Moscow Cats Theatre, located in the center of Moscow, Russia.  Since 1970s Plaintiffs' trademarks, personal names, visual likeness, performance styles, and unique tricks became famous, instantly recognizable and strongly associated with Plaintiffs by hundreds of millions of TV-viewers, and audience members around the world, including the United States.

7. Defendant M. Gelfman was hired by Plaintiff Yuri Kuklachev as a promoter for the highly successful and widely publicized 2005 and 2006 US national tours of Plaintiffs' Moscow Cats Theatre.

8. Upon the completion of the tour in late December 2006, Plaintiff Yuri Kuklachev and his Moscow Cats Theatre returned to Russia, expecting to return and continue with US performances in 2007.

9. Within days of Yuri Kuklachev's departure, his promoter, M. Gelfman, and his agents, employees and representatives, in violation of fiduciary duties and trademark laws, secretly filed

a registration with the United States Patent and Trademark Office to register the famous Kuklachevs' "Moscow Cats Theatre" mark in his own name.

10. M. Gelfman, his agents, employees and representatives then proceeded with setting up their own show, involving cats. For this he hired several performers – including Defendants Anisimov and Krasnolozhkin, among others.

11. Defendant M. Gelfman and his agents, employees and representatives knew that some of these performers have previously illegally performed under Kuklachev's and Kuklachev Theatre's name in Russia and were prevented from doing so by Russian authorities.

12. Human and animal performers of the copycat show dress and perform in ways almost identical to their corresponding performers of the authentic Moscow Cats Theatre. In violation of copyright laws, the structure of the show and most of the tricks are very similar or exactly identical to famous tricks developed by and associated with Plaintiffs.

13. Having set up his own copycat show, Defendants proceeded with a grand advertisement campaign, utilizing a combination of Plaintiffs' trademarks, along with Plaintiffs' portraits, references to Plaintiffs' performances and publications, to advertise and sell tickets to their copycat show. To remove all doubt in the eyes of consumers that their shows are associated with or endorsed by Kuklachevs, Defendants continuously utilized the deceptive phrase "World's Only Moscow Cats Theatre" in reference to the show.

14. Plaintiffs learned of Defendants' actions from dissatisfied theatergoers, who contacted Kuklachev's Moscow Cats Theatre believing that there is a connection between these performances and Kuklachev's Moscow Cats Theatre.

15. Despite numerous warnings, cease-and-desist letters, and two oppositions to Defendant Gelfman's registration of the mark currently pending before the U.S. Patent and Trademark Office, Defendants' copycat performances and intentionally misleading advertisements continue.

16. Upon information and belief, Defendants are still promoting, marketing, offering for sale and selling their copycat products and services, in an effort to mislead and confuse past and prospective audiences and purchasers and to falsely designate the source of origin of their performances and other products. Upon information and belief, Defendants' actions are part of a broad-scope deliberate attempt to damage Plaintiffs' trademarks and personal reputations, as well as to prevent all future US performances by Plaintiffs' world-famous Moscow Cats Theatre. These actions, along with associated damage to Plaintiffs' intellectual property and reputation will continue unless enjoined by this Court.

## PARTIES

17. Plaintiff Yuri Kuklachev, an individual, is world-renown as a clown and the founder of the world's first and only Moscow Cats Theatre. Yuri Kuklachev resides at 5 Zvenigorodskaya Street, Apt. 35, Moscow and has the principal place of business at Moscow Cats Theatre, located in the center of Moscow, at 25 Kutuzovsky Prospect, Moscow 121151, Russia.

18. Plaintiff Dmitri Kuklachev, an individual, is the son and partner of Yuri Kuklachev and is the leading actor and sole producer of several shows at Kuklachev's Moscow Cats Theatre. Dmitri Kuklachev frequently tours abroad with his shows, under the "Moscow Cats Theatre" mark. Dmitri Kuklachev intended to tour the United States in 2007-2008, but was prevented from doing so by Defendants' actions. Dmitri Kuklachev resides at 8-1-35 Zvenigorodskaya St.,

Moscow, Russia, and has the principal place of business at Moscow Cats Theatre, located in the center of Moscow, at 25 Kutuzovsky Prospect, Moscow 121151, Russia.

19. Upon information and belief, Defendant Gelfman Enterprises, Inc. is a corporation or other business entity which maintains a place of business at 2814 East 28 St., Brooklyn, NY, 11235, with principal executive office located at 2955 Shell Rd #6F, Brooklyn, NY, 11224. Defendant Gelfman Enterprises, Inc. is the registrant of the Domain Name "moscowcatstheatre.com". The Domain Name "moscowcatstheatre.com" is used to promote the copycat show.

20. Defendant Mark Gelfman is an individual who is the principal of Gelfman Enterprises Inc. and the executive producer of the infringing show who has personally directed and controlled most of the infringing and tortious activities alleged with respect to the subject matter of this action. Upon information and belief, Defendant Mark Gelfman has conducted his activities with respect to the subject matter of this action from the offices of Defendant Gelfman Enterprises, Inc at 2814 East 28 St., Brooklyn, NY, 11235. Defendant M. Gelfman's residence address is 468 Ocean Parkway, Brooklyn, NY 11218.

21. Defendant Yanis Gelfman is an individual, who is a general manager of the infringing show. Defendant Yanis Gelfman has conducted his activities with respect to the subject matter of this action from the offices of Defendant Mark Gelfman at the address above. Defendant Yanis Gelfman's residence address is 468 Ocean Parkway, Brooklyn, NY 11218.

22. Defendant Vladimir Krasnolozhkin is one of the lead performers of the copycat shows, imitating with his looks, costume and tricks the role of Plaintiff Yuri Kuklachev. Krasnolozhkin's address is 92 Nizhegorodskaya Ulitsa, Korpus 1, Apt. 64, Moscow, Russia.

23. Defendant Vladimir Anisimov is one of the lead performers of the copycat shows, imitating with his looks, costume and tricks the role of another clown at the Kuklachev's Moscow Cats

Theatre. Defendant Anisimov's mailing address is c/o Vladimir Anisimov, Russia, Kazan, 430007, Kremlevskaya Street 2, Circus (430007, г. Казань, ул. Кремлевская, 2, Цирк).

24. Upon information and belief, Tribeca Performing Arts Center is a New York corporation having an address and principal place of business at 199 Chambers Street #110SC, New York, NY 10007. Yuri Kuklachev performed in Tribeca during his 2005-2006 tour. Tribeca later hosted and promoted copycat performances while being aware of the copycat nature of the performances.

25. Defendant Dmitry Krassotkine is listed on Defendants-controlled "Moscowcatstheatre.com" domain as a "press representation" of the copycat performers. Upon information and belief Dmitry Krassotkine's address is 14426 N Buckthorn Ct, Fountain Hills, AZ 85268.

26. Ticketmaster is a Limited Liability Company with a domain name www.ticketmaster.com, headquartered in West Hollywood, California, primarily in the business of advertising performances and selling tickets online. With 6,700 Ticket centers, and broad business presence in the state of New York, Ticketmaster is one of the major show advertisers and ticket retailers for New York Broadway performances, as well as most other US show performances. Ticketmaster and its associates broadly participated in advertisement and sale of tickets of both the actual Kuklachev's Moscow Cats Theatre, and then of the copycat performances. Throughout 2007-2008, Ticketmaster advertised copycat performances under the "Moscow Cats Theatre" trademark, a large and prominent poster of Dmitri Kuklachev, and accompanied by the description of Kuklachev's prior US performances and media appearances. Their address in New York City is 555 W 57th St Fl 14, New York, NY 10019.

27. John Hancock Hall is a business entity with an address at 180 Berkeley Street, Boston, MA 02116. John Hancock Hall participated in hosting and advertisement of copycat performances.

28. Gwinnett Center is a business entity with an address at 6400 Sugarloaf Parkway, Duluth, Georgia 30097. Gwinett Center participated in hosting and advertisement of copycat performances.

29. LA's Wilshire Ebell's Theatre is a business entity with an address at 4401 West Eighth Street, Los Angeles, CA 90010.  LA's Wilshire Ebell's Theatre participated in hosting and advertisement of copycat performances.

30. Onlineseats.com is a business entity with an address at 2614 N. California Avenue, Chicago, IL  60647. Onlineseats.com participated in advertising and selling tickets for copycat performances.

31. Napa Valley Opera House is a business entity with an address at 1030 Main Street, Napa, CA 94559.

32. Yuri Pototski is an individual who is the director of the copycat shows.  His address is 26 Tudor Terrace, Brooklyn, NY.

33. Michael Zlotnikov is an individual who is the director of the copycat shows.  Michael Zlotnikov's address is 10 Pavilion Ave, Long Branch, NJ 07740.

34. Stanislav Nemoy is a technical director. His business address is 2814 East 28 St., Brooklyn, NY, 11235.

35. Kean University is an educational establishement with an address at 1000 Morris Ave, Union, NJ.  Kean University participated in advertisement and hosting of the copycat performances at its Wilkins Theatre.

36. Palace of Fine Arts is a business entity with an address at 3301 Lyon Street, San Francisco, CA 94123.  Palace of Fine Arts participated in hosting and advertisement of copycat performances.

37. The Times-Union Center for the Performing Arts is a business entity with an address at 300 Water St W, Jacksonville, FL 32202. The Times-Union Center for the Performing Arts participated in hosting and advertisement of copycat performances.

38. Seattle Repertory Theatre is a business entity with an address at 155 Mercer Street, Seattle, WA 98109. Seattle Repertory Theatre participated in hosting and advertisement of copycat performances.

## JURISDICTION AND VENUE

39. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1); pursuant to 28 U.S.C. §1338(a) and (b), in that this action arises under the Lanham Trademark Act, 15 U.S.C. §1051 *et seq.*, and in that a claim of unfair competition is joined with a substantial and related claim under the Lanham Trademark Act; and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1367(a).

40. This Court has jurisdiction over this action based on diversity of citizenship, in that Plaintiffs are citizens of Russian Federation and defendants are citizens of the US and/or corporations incorporated under the laws of US state(s). The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars.

41. This Court has personal jurisdiction over all Defendants, by virtue of the fact that, upon information and belief, they (1) regularly solicit business in this state; and (2) have committed a tortious act within the state by committing, among other acts, acts of infringement and unfair competition in this state.

42. This Court has personal jurisdiction over individual Defendants, among them Mark Gelfman, Yanis Gelfman, Gelfman International Enterprises, Inc., Yuri Pototski and Michael Zlotnikov because they are domiciled in this District and regularly solicit and conduct business there.

43. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the individual Defendants are residents of this District and the State of New York and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS COMMON TO THE COUNTS

44. In the early 1970's, Plaintiff Yuri Kuklachev, the founder of the "Moscow Cats Theatre", became renown as the world's first and only clown to perform with a "troupe" of cat performers.

45. Cats are notoriously smart, easily offendable, independent and stubborn animals, commonly thought to be untrainable prior to the development by Yuri Kuklachev, in 1970s, of a unique humane feline training method.  On the basic level, the method involves gentle individual approach to each cat, evaluating each cat's personal likes, dislikes, and inborn abilities.  Rather than "training" a cat in a traditional way to perform a particular trick, a cat is selected for each role based on its individual skills and preferences, much like the actors in a theater are.  In performances, each cat is also allowed much more artistic latitude and improvisation opportunities than traditional trained animals are.  The animals perform and are interacting with human actors.  That is why, from the first days of his show, which was initially part of the Moscow State Circus, Yuri Kuklachev has always unusually, and in contrast to other trainers, referred to his cats as actors, and to his performances as a "theatre."

46. By mid-1970's Kuklachev's unusual Cats Theatre performances became an instant hit around the world and in the United States in particular.  From that time and until the present day, excerpts from the show are frequently translated by TV stations around the world (including in

the US) and discussed in newspapers, making Kuklachev a household name, instantly associable with cats and his Moscow Theatre.   In former USSR and Soviet block countries, Kuklachev's name is legendary and his fame is unparalleled.   One of the biggest former Soviet leaders, Leonid Brezhnev, never missed Kuklachev's performances. Kuklachev's performances became part of nearly every children TV show and every official state concert, commonly watched by all and transmitted on all Soviet TV channels.   Busts and action figures of Kuklachev with his cats were made in Russia and exported around the world.   (See **Exhibit A**, showing a porcelain figurine of Yuri Kuklachev from the 1970s and seller's natural association of Kuklachev with Moscow Cats Theatre).

47. In 1977, Yuri Kuklachev with his Cats Theatre act becomes among the first Soviet performers to officially tour the United States.   Due to the tremendous success of the US tour, Yuri Kuklachev and his cats return for another US tour in 1980.   Since then, and particularly after the collapse of the USSR, Yuri Kuklachev, his family, and their Moscow Cats Theatre have regularly toured the United States and intend to do so in the future.   Yuri Kuklachev, his tricks and the unique Moscow Cats Theatre are well known and recognized by audiences in the United States.

48. Kuklachev's Moscow Cats Theatre toured in well over 80 countries, in many of them (including the U.S.) repeatedly.   Kuklachev's performances, particularly those performed outside the walls of their famous Moscow Cats Theatre, have always emphasized the elements of Russian, and particularly Moscovite folklore.  For example, Moscovite folk music is used, and many of the cats perform in Moscovite folk costumes throughout the show.   Naturally, whenever the Kuklachev's Cats Theater was referred to, or announced outside of Russia, including the United States, the word "Moscow" was used with the phrase "Cats Theatre" to

indicate the geographical origin of the theatre and the folk-music and folk-costume nature of the show.

49. Kuklachevs and their Moscow Cats Theatre won great worldwide fame and some of the highest entertainment performance awards around the world. The awards include the title of the "Narodniy Artist" - the highest and most prestigious Russian entertainment award, the "Silver Clown Award" in Monte Carlo, "Gold Clown Crown" in Canada, "Gold Oscar" in Japan, portrayal on a San Marino Postage stamp, an entire chapter in the main national grammar book in France, Honorary Membership in the American Clown Association, and countless other honors.

50. In 1990, Kuklachev's first and only Cats Theatre, with a building located in the tourist center of Moscow, becomes one of the first private theaters in Russia and a Moscow tourist landmark. To this day, the Theatre (located at 25 Kutuzovski Prospect, Moscow) is among the most popular in Russia, attracting numerous tourists, many of whom come from the United States.

51. In 2005-2006 Yuri Kuklachev's Moscow Cats Theatre came to the United States for an extended tour. The tour included performances in numerous states, on both coasts, as well as regular on-Broadway performances, all under the name of "MOSCOW CATS THEATRE." The performances were met with spectacular success and received broad news coverage throughout the United States.

52. Extensive Russian American media, including Russian American TV and radio stations, and numerous newspapers regularly publish articles about Kuklachev's Moscow Cats Theatre and always provide broad coverage of Kuklachev's US tours. For over a decade, Russian American media has referred to Kuklachev's performances by Russian-language trademarks, such as "Teatr Koshek" (Cats Theatre), "Moskovskii Teatr Koshek" (Moscow Cats Theatre), and "Teatr

Koshek Kuklacheva" (Kuklachev's Cats Theatre).  All of these marks in Russian and English translation are strongly associated with Kuklachev by the vast majority of over 3-million of Russian-speaking Americans (most of whom remember Kuklachev from Russia).  For most of Russian American community, the above Russian-language marks and their English-language translations are identical.  The above Russian-language marks are also legally similar to their English translations, in accordance with the trademark Doctrine of Foreign Equivalents.

53. Kuklachev's US performances attracted audiences and publicity extending far beyond the Russian-American or animal-lover communities.

54. Long prior to and during the 2005-2006 tours, the "Moscow Cats Theatre" mark was unequivocally recognized by the audiences and the media as belonging to the famous Kuklachev family.  For example, upon Kuklachev's arrival to the United States in 2005, major American national networks and publications came out with stories about Kuklachev and the famous Moscow Cats Theatre he founded decades ago.

55.  The front page of the New York Times from September 17, 2005 read: "Who Says You Can't Teach a Cat New Tricks? Yuri Kuklachev's Moscow Cats Theater has performed all over the world".  In July 26, 2005, the Arts section of the New York Times reported: "Billed as the only entertainment of its kind, "Moscow Cats Theater," created by the circus performer Yuri Kuklachev and featuring 20 cats, 2 dogs and 8 clowns, will make its United States debut at the Tribeca Performing Arts Center".  The Boston Globe wrote on January 22, 2006: "Kuklachev is the 56-year-old founder and (human) star of Moscow Cats Theatre, which travels to Boston for four performances on Saturday and Sunday."  CBS network reported on October 19, 2005: "Anyone who owns a cat knows how tough it can be to get them to do just about anything. But don't tell that to Yuri Kuklachev, founder of the world famous Moscow Cats Theatre".

56. Countless other publications by highly reputable American media sources and individuals demonstrate broad public knowledge and belief in the ownership and association of Kuklachev's family with the Moscow Cats Theatre.

57. The success of the tours was in part due to Yuri Kuklachev's great efforts to promote his Moscow Cats Theatre in American media. As part of the promotion effort, Yuri Kuklachev personally gave interviews to major newspapers, and appeared with the cats on such television shows as "Good Morning America," "Good Day," "CBS Early Show," "Inside Edition," "The Montel Williams Show," "Live with Regis and Kelly," and countless others, to promote his Moscow Cats Theater, and strengthen his common law rights to the well-known and famous "Moscow Cats Theatre" mark.

58. In interviews, Kuklachevs often have to retell the story of founding the Moscow Cats Theatre, and explain why such unusual designation/mark as a "Cats Theatre," was chosen for the performances.

59. Defendant M. Gelfman and his company Gelfman International Enterprises, Inc. were hired by Yuri Kuklachev in 2005 because defendant M. Gelfman knew Russian, to assist Kuklachevs in arranging and marketing Kuklachevs' tour. There were no prior business relations between Kuklachev family and Defendant M. Gelfman and/or Gelfman International Enterprises, Inc.

60. There were never any business or other relations between Plaintiff Dmitri Kuklachev and any of the Defendants.

61. The "Moscow Cats Theatre" mark, along with "Cats Theater" mark and their Russian-language translations/equivalents were used in the United States (and never abandoned) by Kuklachev family, and by the public and the media in association with Kuklachev, long before any business relations with Defendants were formed. (See. e.g. **Exhibit B**).

62. In early 2007, Plaintiffs started planning the continuation of American tour of the Moscow Cats Theatre, fully expecting to continue their cooperation with Defendant Mark Gelfman. At that time, much to their surprise, Kuklachevs learned that someone other than a member of Kuklachev family is already performing in the United States under the "Moscow Cats Theatre" mark.   Further investigation revealed that Defendant M. Gelfman has breached his duties to Kuklachev and was behind staging of the performances under Kuklachevs' famous marks, as well as numerous other violations of Kuklachevs' rights and US laws.

63.  Further investigation revealed that within days of Moscow Cats Theatre's departure from the US, the Defendants usurped the good and famous name and worldwide acclaim of Kuklachev's famous "Moscow Cats Theatre" mark.   On January 4, 2007, mere days after the Moscow Cats Theatre departed from the US, Defendant M. Gelfman, without Kuklachev's knowledge or consent, filed the trademark application (Application Serial No. 77075635, Filing Date: January 4, 2007)  with US Patent and Trademark Office, to register Kuklachevs' "Moscow Cats Theatre" mark in his own name.

64. Defendant M. Gelfman has secretly, without Plaintiff's knowledge, contacted and hired Defendants Anisimov and Krasnolozhkin, along with their families (hereinafter jointly referred to as the "Copycat Performers") to perform in a copycat show.

65. Defendant Krasnolozhkin has previously worked for Kuklachev's Moscow Cats Theatre, where he has learned several of the trade secrets involved in training and performing with cats, according to Kuklachev's method.   Following discharge from the Moscow Cats Theatre in the 1990s, Defendant Krasnolozhkin conducted a series of tours to the distant corners or Russia, where he falsely presented his troupe as part of the Kuklachev's Cat Theater.   On these rural tours, defendant Krasnolozhkin, having a physique reminiscent of Yuri Kuklachev, is known to

have dressed like Kuklachev, dyed his hair in light color, and attempted to pass himself off as Yuri Kuklachev. Since Kuklachev is a cult figure in Russia, such copycat performances were soon discovered by local authorities and stopped by Russian police. These facts of previous copycat performances and passing off in Russia by Copycat Performers were well known by Defendant M. Gelfman prior to hiring the Copycat Performers.

66. Kuklachevs have many loyal fans. Maintaining fans trust and loyalty is a priority for Kuklachevs. These fans, and the public, associate the name "Moscow Cats Theater" (and any its versions) only with Kuklachevs.

67. Following the real Moscow Cats Theatre's departure from the United States, the Defendants proceeded with false advertising and scheduling of performances of the copycat show under the "Moscow Cats Theatre" mark. Upon information and belief, M. Gelfman and/or Defendant Gelfman Enterprises, Inc. entered into contractual relations and/or conspired with Defendants Tribeca, Ticketmaster, Yanis Gelfman, Vladimir Krasnolozhkin, Vladimir Anisimov, Dmitry Krassotkine, John Hancock Hall, LA's Wilshire Ebell's Theatre, Gwinnett Center, Napa Valley Opera House, Yuri Pototski, Michael Zlotnikov, Andrey Yankovis, Stanislav Nemoy and others, for the purpose of advertising, selling tickets, and carrying out these copycat performances. Upon information and belief all Defendants knew of the copycat nature of the show and deceptive nature of advertisements, yet promoted and/or performed and financially benefited from the performances.

68. Defendants also registered a domain name "moscowcatstheatre.com" in the name of Gelfman International Enterprises, Inc., and utilized the domain for deceitful advertising and marketing of infringing performances. Kuklachevs have no control over the content contained on the website reached through this Domain Name. The Domain Name was initially registered by M. Gelfman

in his role as Kuklachev's promoter/agent, with the purpose of promoting Kuklachev's Moscow Cats Theatre's performances.   Throughout Kuklachev's 2005-2006 tours, the domain was devoted entirely to Kuklachev's persona and Kuklachev's Moscow Cats Theatre's performances and became strongly associated with Kuklachevs and their Theatre.   In early 2007, without Kuklachevs' knowledge or authorization, defendants converted Kuklachev's domain for use in advertising of their copycat performances.

69. Defendants' deceptive advertisement campaign for Defendants copycat performances includes the wrongful use of the marks "Moscow Cats Theatre," and "Moscow Cats," in conjunction with Yuri Kuklachev's and Dmitri Kuklachev's likeness and image and Kuklachev's Moscow Cats Theatre's promotional materials, causing actual confusion among the audience. See, e.g., **Exhibit C** for the sampling of advertising materials of Defendants' copycat performances, using the images of, or implying the connection to, the Kuklachev's family.

70. Audience members, confused by deceptive advertisements, started to contact Kuklachev's Moscow Cats Theatre in Moscow.   Convinced by the false advertisements that there is a connection between copycat performances and Yuri Kuklachev, audience members demanded their money back.

71. Well informed of the actual confusion being caused by their advertising, Defendants continued to use posters with famous images of Yuri and Dmitri Kuklachev to lure and deceive the clients.   Ironically, even the specimen provided by Defendant Mark Gelfman to the US Patent and Trademark Office to show priority of use of the mark (See **Exhibit D**), is Kuklachev's poster, bearing a large photo of Dmitri Kuklachev, with a cat, doing Kuklachev's famous front-paw stand on Dmitri's hand.   Yet, the poster with Dmitri Kuklachev's likeness advertises the 2007 Los Angeles and San Francisco tours of the copycat "Moscow Cats Theatre"

– the tours that were neither connected to, nor in any way endorsed by the Kuklachev family or the Moscow Cats Theatre.

72. Exacerbating the confusion of the public as to the origin of the mark, the Kuklachev's famous "Moscow Cats Theatre" mark on the specimen poster is complemented with the words "World's Only."   Since most people who have ever heard of trained cats know only of Kuklachevs, defendants use the intentionally misleading "world's only" designation on most of their advertising materials, to exacerbate and profit from the audience confusion. (**Exhibit D**)

73. Knowing that the public associates the Moscow Cats Theatre mark with Kuklachev family, the Defendants continue to use the mark in conjunction with images of Kuklachevs for deceptive advertising.    To this day, another prominent poster used for Defendants' advertisement campaign, portrays Dmitri Kuklachev, with a cat on his palm.  Other posters and promotional materials, such as t-shirts sold at the entrance to the show, booklets and playbills utilized by Defendants in conjunction with the mark, bear portraits of Yuri Kuklachev and contain other unambiguous references to the Kuklachev family.  (**Exhibit C**).

74. The performances conducted by Defendants under the "Moscow Cats Theatre" mark are very similar in nature to the ones performed by the authentic Kuklachev's Moscow Cats Theatre, targeting the same audiences, in the same venues, using the same promotion methods.  Even the applicant's cat show performer dresses in very similar clown suit, wears similar makeup, hairstyle, and acts in a way very similar to Kuklachev, leading to numerous cases of actual mistaken identity by the audience.  See **Exhibit E**, showing the photograph of Defendant Krasnolozhkin, being mistaken for famous Kuklachev by cat lovers online.

75. Defendants' stage setup, show themes, devices utilized and tricks performed are all either directly copied from the ones developed and utilized by Kuklachevs' Moscow Cats Theatre or

copied and insignificantly modified in attempt to avoid liability for willful infringement of Plaintiffs' copyrights.

76. At the opening of the copycat shows, the audiences are greeted by birdfeeders positioned at the ends of the stage. The birdfeeders serve as hideaway houses for cats throughout the show. The unusual use and positioning of birdfeeders was invented by Kuklachev and utilized as a major element of show plot and stage design for decades. Much like Kuklachev's show, copycat performances are conducted mostly to Russian folk music, with cats, often dressed in Russian costumes, riding electric cars and pushing the carts with other animals in them.

77. Copycat performers utilize all or most of Kuklachev's key tricks, such as cats climbing the horizontal bars raised to human shoulder height, jumping from a long pole onto a small pillow held in clown's hands, etc.   As the culmination and one of the scariest parts of the show, the performers utilize a rocking horse with a cat on it, rocking so that the cat almost flies off. The cat holds on, though, and the audiences breathe a sigh of relief. To relieve the stress, audiences are shown a comic sketch. The sketch involves a clown going to sleep at night. The moment the clown turns off a lamp, a pet comes on stage and turns the lamp back on. This is repeated several times. The clown gets angry, unscrews the bulb and smashes it to pieces. The animal comes back on stage and seems to be eating the glass shreds, with the sound of grinded glass in the background. When the animal leaves the stage, turning its behind towards the audience, they see a light bulb shining under its tail. All of these tricks are famous Kuklachevs' tricks, forming a major part of Kuklachev's performances, extremely memorable, and were taken and used by Defendants, along with other major and unusual tricks and sketches directly from Kuklachevs' performances.

78. Defendants completed the resemblance to the Moscow Cats Theatre atmosphere by the presence of a tall thin and a shorter stocky male clowns, along with a girl, wearing different-colored shoes and socks, all parts of Kuklachevs' show, along with traditional clown juggling, ring spinning and balloon acts, traditionally accompanying the Moscow Cats Theatre performances.

79. Upon learning of ongoing violations in the US, Plaintiffs immediately located their attorneys, and sent a cease and desist letter to Defendant Mark Gelfman in hopes of a peaceful resolution. Following the receipt of the cease and desist letter,  Defendant Mark Gelfman continued to utilize the mark and the likeness of Yuri Kuklachev and Dmitri Kuklachev for advertising in conjunction with the mark.  Following the cease-and-desist letter, new performances were scheduled by Defendants, continuing with the scheme of intentionally misleading the public as to the origin of infringing performances, and damaging the mark and Kuklachevs' family reputation in the United States.  (**Exhibit C**).

80. In the course of infringing performances, Defendants Gelfman, Anisimov and Krasnolozhkin, as well as performance venue Defendants -  theatres -  were approached or contacted by numerous audience members upset with the absence of Kuklachevs, and deceitful advertisements.  Such complaints were dealt with in the ruddest manner by Defendant Mark Gelfman.  Despite knowledge of infringements, performance venue Defendants also continued with scheduling and selling tickets for the performances.

81. In August and September of 2007, Plaintiffs initiated two proceedings before Trademark Trial and Appeal Board of the United States Patent and Trademark Office, opposing the registration of the "Moscow Cats Theatre" mark by Defendant Mark Gelfman.  The oppositions were filed under the belief that such filings will force Mark Gelfman to rethink his actions and

avoid litigation. However, infringements continued unabated. Both actions (Opposition No. 91179373 and 91179281) are currently pending before the Board and will likely be suspended, pending the outcome of this litigation.

82. Plaintiff Yuri Kuklachev applied for registration of his common law rights in the "Moscow Cats Theatre" mark. The registration is pending at US Patent and Trademark Office.

83. On December 9, 2007, realizing that Defendants do not intend to stop the performances, and have in fact stepped up the deceitful advertisements and the performance schedule for the 2007-2008 holiday season, Plaintiffs sent a cease-and-desist letter to Defendant Tribeca, demanding immediate stop to the violations of intellectual property and other laws taking place under its roof. In its reply, dated January 2, 2008, Tribeca refused to take any action against the violations, instead referring the case to the courts.

84. Tribeca's initial "willful blindness" and cooperation in violation of intellectual property and other rights is particularly egregious. Like all other performance venue Defendants, Tribeca had a duty to Plaintiffs, as well as to its audience to check the identity of its performers and that performers are indeed part of the "world's only" "world famous" "Moscow Cats Theatre."

85. Kuklachevs' Moscow Cats Theatre, and Kuklachevs themselves, have extensively performed in Tribeca during the 2006 US tour. Kuklachevs' fame and association of their name with the Moscow Cats Theatre was well known to Tribeca's management. Tribeca's management was personally acquainted with Kuklachevs, as well as with the members of their cast. Tribeca management has witnessed the authentic Moscow Cats Theatre show numerous times. From the first copycat performance within its walls, even without audience complaints and cease-and-desist letters, Tribeca knew or should have known of the copycat nature of the performances, as well as the blatant copyright, trademark, publicity rights, and other violations, and should have

taken immediate actions to stop such violations. Instead, Tribeca continued to advertise and sell copycat performance tickets to audiences even after being officially informed of the violations.

86. Similarly, Kuklachevs performed in LA's Wilshire Ebell's Theatre and several other Defendant venues prior to the commencement of the copycat performances. The management of these theatres personally knew Kuklachev and were aware of the unique nature of Kuklachev's shows and his "Cats Theatre" mark, and the strong association between the two, yet intentionally promoted and benefited from the intentionally-deceitful advertisements and performances.

87. Defendants' acts of trademark infringement and unfair competition have been committed with the intent to cause confusion, mistake, and to deceive.

88. Kuklachevs have not authorized Defendants to use their names, images or likeness in connection with the shows, have not authorized Defendants to use the name of their theater or contents or likeness of their shows. The marketing and performances by the Defendants are a commercial exploitation of Kuklachevs' and their theaters' name, likeness and goodwill for Defendants' own commercial profit.

## COUNT 1: FEDERAL TRADEMARK INFRINGEMENT

89. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 89 as though fully set forth herein.

90. Defendants have infringed Plaintiffs' mark in interstate commerce by various acts, including conducting a U.S. national tour under the name of "Moscow Cats Theatre," and selling, offering for sale, and broadly and deceptively advertising, including on national TV and radio networks and newspapers, their copycat shows under the name and mark of "Moscow Cats Theatre," and its variants, such as "Cats Theater" and Russian translations of these marks. The use of

Plaintiffs' names and marks by Defendants is without permission or authority of Plaintiffs and has caused and continues to cause massive actual confusion, mistake and deception.

91. Defendants' acts as alleged constitute trademark infringement, false representation and false description in violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a), all to the substantial and irreparable injury of the public and of Plaintiffs' business reputation and goodwill.

92. Defendants' heretofore alleged acts of trademark infringement and unfair competition have been committed with willful intent to trade on Kuklachevs' reputation and to cause actual audience confusion, mistake and deception.

93. Defendants were given numerous notices of infringement and actual confusion.  Aside from multiple letters and complaints received from outraged members by the Defendants, official cease-and-desist letters were served upon Defendants Mark Gelfman, Gelfman International Enterprises, and Tribeca.  Two opposition proceedings were instituted against Defendant Mark Gelfman's registration of the Moscow Cats Theatre mark and published by US Patent and Trademark Office.

94. Upon information and belief, by such wrongful acts, Defendant Mark Gelfman, as well as all other Defendants have already caused, and unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiffs and to the goodwill associated with their trademarks, including diversion and confusion of audiences, lost sales and lost profits.  An award of monetary damages alone cannot fully compensate Kuklachevs for their injuries and Kuklachevs lack an adequate remedy at law.

95.   Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, disgorgement of profits, treble damages and costs and attorneys' fees.

## COUNT 2: FALSE REPRESENTATION – LANHAM ACT 43(a)

96.  Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 96 as though fully set forth herein.

97.   Defendants' acts as alleged constitute false endorsement, false representation and false description in violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a), all to the substantial and irreparable injury of the public and of Plaintiffs' business reputation and goodwill.

98. Defendants' unauthorized publication, promotion and dissemination of the show and fraudulent registration, conversion and use of the Domain Name in commerce constitutes false and misleading representations that the shows and the website linked to the Domain Name are sponsored, endorsed and /or authorized by Kuklachevs.

99.   Such false and misleading representations are likely to confuse, mislead or deceive consumers as to the affiliation, connection and/or association of Kuklachevs, their theater and their marks with the shows and the website to which the Domain Name leads, in violation of 15 USC 1125(a), Lanham Act Section 43(a).

100. Upon information and belief, by such wrongful acts, Defendant Mark Gelfman, as well as all other Defendants have already caused, and unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiffs and to the goodwill associated with their trademarks, including diversion and confusion of audiences, lost sales and lost profits.

An award of monetary damages alone cannot fully compensate Kuklachevs for their injuries and Kuklachevs lack an adequate remedy at law.

101. The above actions by Defendants constitute deliberate and willful violations of Section 43(a) of the Lanham Act, making this case exceptional within the meaning of 15 USC 1117 and 1118.

102. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, disgorgement of profits, treble damages and costs and attorneys' fees.

## COUNT 3: UNFAIR COMPETITION AND FALSE DESIGNATION

103. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 103 as though fully set forth herein.

104. Section 43(a) of the Lanham Act, 15 USC 1125(a), prohibits the sale of any goods or services in commerce bearing false designations of origin or false descriptions or presentations of any goods or services in commerce.

105. Kuklachevs use their names, likeness and image as well as the name and likeness of their theater in commerce to identify and distinguish products and services sold or authorized by Kuklachevs.

106. Defendants have caused the copycat performance to enter into interstate commerce with the designation and representation of "World's Only" "Moscow Cats Theatre" connected therewith. The performances are advertised along with photographs and drawings of Yuri and Dmitri Kuklachev, as well as with references to media appearances and publications about Kuklachev and his famous Cats Theatre, the only Cats Theatre located in Moscow and all of Russia.  None of the Defendants have any physical theatre in Moscow.

107. Defendants have wrongfully misappropriated and used Kuklachevs' names, marks, likeness and image, as well as name and likeness of their theater, in commerce on and in connection with the shows and the website linked to the Domain Name, and possibly for other purposes, in competition with the products and services sold or authorized by Kuklachevs. Defendants' unauthorized use is likely to confuse and mislead consumers as to the source and sponsorship of the shows, the Domain Name and the website, in violation of 15 USC 1125(a), Lanham Act Section 43(a).

108. Defendants' unauthorized use of Kuklachevs' name, likeness and copyrighted promotional materials, as well as Defendants' unauthorized use of Kuklachev theater's trademarks in connection with publication, promotion and dissemination of Defendants' shows and the Domain Name expressly or impliedly misrepresents that the shows and the website contain truthful information about Kuklachevs' and their theater.

109. The above described use of "The Moscow Cats Theatre" by Defendants is a false designation of origin which is likely to cause, and has already caused, massive confusion, mistake and deception as to the affiliation, connection or association of defendants with plaintiffs and as to the origin, sponsorship, or approval of such performances by plaintiff. These acts are in violation of 15 U.S.C.A. § 1125(a), in that Defendants have used in connection with goods and services a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs and as to the origin, sponsorship, and approval of defendants' goods, services and commercial activities by famous Kuklachevs.

110. Upon information and belief, by such wrongful acts, Defendant Mark Gelfman, as well as all other Defendants have already caused, and unless restrained by the Court, will continue to

cause serious irreparable injury and damage to Plaintiffs and to the goodwill associated with their trademarks, including diversion and confusion of audiences, lost sales and lost profits. An award of monetary damages alone cannot fully compensate Kuklachevs for their injuries and Kuklachevs lack an adequate remedy at law.

111. The above actions by Defendants constitute deliberate and willful violations of Section 43(a) of the Lanham Act, making this case exceptional within the meaning of 15 USC 1117 and 1118.

112. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, disgorgement of profits, treble damages and costs and attorneys' fees.

## COUNT 4: FEDERAL TRADEMARK DILUTION

113. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 113 as though fully set forth herein.

114. The "Moscow Cats Theatre" mark is strong and distinctive and has long been used around the world and United States in particular, by national media (Such as CNN) and in advertising, in connection with performances by Kuklachev's Cats Theater.

115. Kuklachevs' personal names, likeness and their theater's names (Moscow Cats Theatre, Cats Theatre, and their foreign equivalents, such as "Teatr Koshek") are widely recognized by those in the trade and by the general consuming public of the United States as a designation of services (i.e. performances) by Kuklachev's world-famous Theatre, and are famous marks within the meaning of the federal Anti-Dilution Act, 15 USC 1125(c).

116. Prior to infringing performances by Defendants, the marks, names and likeness of Plaintiffs and their theater has always been in exclusive use by Kuklachevs. Defendants' use of the mark started long after Plaintiffs' mark became famous.

117. Defendants' unauthorized use in interstate commerce, including unauthorized publication, and broad dissemination of the "Moscow Cats Theatre" trademark in connection with copycat performances is likely to tarnish, dilute and blur the distinctive quality of Plaintiffs' famous "Moscow Cats Theatre" and "Cats Theater" Trademarks, all causing the irreparable injury and damage of Plaintiffs.

118. Kuklachevs have no control over the quality of the shows, Defendants' advertising and other promotional materials, the Website, Defendants' use of Kuklachevs' marks or Defendants' other misappropriations of Kuklachevs' name and likeness for their commercial purposes. As a result of Defendants' acts, the distinctive qualities of Kuklachevs' name, marks and image are likely to be diluted and diminished.

119. Defendants are suing and disseminating shows and materials bearing Kuklachevs' famous marks, name and likeness in commerce for commercial purposes. Unless enjoined, Defendants' unauthorized actions will continue to dilute and diminish the distinctive nature of Kuklachevs' marks through blurring, in violation of 15 USC 1125(c).

120. Defendant willfully intended to trade on Plaintiffs' reputation and to cause dilution of Kuklachevs' famous "Cats Theater" and "Moscow Cats Theatre" Trademarks, so as to permanently remove Kuklachevs from the US market.

121. Defendants' unauthorized misappropriation and wrongful use of Kuklachevs' name and trademarks are causing, and unless enjoined, will continue to cause, irreparable and ongoing damages to the rights of Kuklachevs and to Kuklachevs' business, reputation, and goodwill in the

form of loss of income, dilution, and interference with Kuklachevs' ability to exploit his own merchandising rights and impairment of Kuklachevs' goodwill.

122. Defendants' actions constitute dilution of Plaintiffs' trademarks, arising under the Federal Trademark Dilution Act of 1995, 104 P.L. 98 as codified in Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

123. Defendants' actions constitute deliberate and willful violations of 15 U.S.C. §  1125(c), making this case exceptional within the meaning of 15 USC 1117 and 1118.

124. Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, disgorgement of profits, treble damages and costs and attorneys' fees.

### COUNT 5: FEDERAL ANTI-CYBERSQUATTING – LANHAM ACT 43(d)

125. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 125 as though fully set forth herein.

126. The aforesaid acts and conduct of Defendants are, and unless enjoined, will continue to be, in violation of Section 43(d) of the Lanham Act, 15 USC 1125(d).

127. Kuklachevs' names and the name of their theater, Moscow Cats Theatre, were "distinctive" or "famous" at the time Defendant Gelfman International Enterprises, Inc. and/or M. Gelfman registered the Domain Name "moscowcatstheatre.com". The Domain Name  registered and converted for his own use by the Defendant Gelfman International Enterprises, Inc. and/or M. Gelfman incorporate a name or mark that is identical or confusingly similar to Plaintiffs' famous names and mark. Defendants Gelfman International Enterprises, Inc. and/or M. Gelfman registered and are using the Domain Name with a "bad faith intent to profit" from the mark.

128. These acts of Defendants have caused and will continue to cause severe and irreparable harm to Plaintiffs, unless Defendants are preliminarily and permanently enjoined from registering and using the Domain Name.

129. Defendants' unauthorized misappropriation and wrongful use of Plaintiffs' and their theater's name and trademark in the Domain Name are causing, and unless enjoined, will continue to cause, irreparable and ongoing damage to the rights of Kuklachevs and to their business, reputation and goodwill.

130.    The above actions by Defendants constitute deliberate and willful violations of 15 USC 1125(d), making this case exceptional within the meaning of 15 USC 1117 and 1118.

131.    Plaintiffs are entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, disgorgement of profits, treble damages and costs and attorneys' fees.

### COUNT 6: VIOLATION OF PRIVACY AND PUBLICITY RIGHTS

132. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 132 as though fully set forth herein.

133. Defendants have on a number of occasions, continuously, and in a great number of venues, used names, pictures and portraits, of both Yuri and Dmitri Kuklachevs for broad-scale advertising purposes, and for the purposes of trade .

134. As described above, Defendants have also widely employed look-alike actors in the performance and advertisement of their shows.

135. Defendants have not obtained the written consent of any of the Plaintiffs to use such images and likeness in commerce or otherwise in connection with any of Defendants' performances.

136. Neither Defendant Mark Gelfman, nor any other Defendants ever had any contractual relations with Plaintiff Dmitri Kuklachev.

137. Defendants were informed numerous times by several cease-and-desist letters, oppositions, and otherwise, that both Plaintiffs object in the strongest terms to the use of their names and images/likeness by Defendants to promote Defendants' goods and services.

138. By virtue of Plaintiffs' significant expenditures  of time, effort and talent, and the widespread recognitions of Plaintiffs' celebrity status, Plaintiffs have rights of publicity in their name, image and likeness.

139. Despite Plaintiffs repeated objections, Defendants continued to use Plaintiffs' images, portraits and photographs for trade and advertising throughout the entire year 2007 and 2007-2008 holiday season.  Upon information and belief, Defendants intend to continue such use of Plaintiffs' likeness, including photographs, portraits, look-alikes.

140. Defendants' use of Plaintiffs' likeness in advertising and trade is knowing and willful, and is calculated to create a false and misleading impression with the public that Kuklachevs, world-famous celebrities, are endorsing, or are otherwise connected with Defendants' Performances.

141. Defendants' use of Plaintiffs' images is in the manner forbidden or declared to be unlawful by Article 5, sections 50 and 51 of the New York Civil Rights Law.

142. Defendants' use of Plaintiffs' names and likeness is not in connection with newsworthy events, but are for the purpose of trade and commerce, in connection with Defendants' sale and advertising.

143. Defendants appropriated Plaintiffs' name and likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose.  In addition to any monetary gain from

the shows, the Domain Name and advertisements, Defendants gained the benefit of a celebrity endorsement without having to obtain consent or to pay for it.

144. Defendants' aforementioned acts also constitute violation of both plaintiffs' common law right of publicity and privacy and their rights of publicity and privacy in violation of NY Civ. Rights Law 50, 51.

## COUNT 7: INJURY TO BUSINESS REPUTATION; NY TRADEMARK DILUTION

145. Plaintiffs reallege and incorporate by reference the allegations recited in paragraphs 1 through 145 of this Complaint as if fully set forth herein.

146. Defendants, through their actions, have created a likelihood of injury to Plaintiffs' business reputation and of dilution of the distinctive quality of the Plaintiffs' marks and trade name, in violation of N.Y. Gen. Bus. Law 360-L.

147. As a result of the Defendants' aforesaid acts, and as a result of unauthorized use and publication by all defendants of Plaintiffs' "Moscow Cats Theatre," and "Cats Theater" (and their Russian translations under the Trademark doctrine of foreign equivalents) have, and unless restrained by the Court, will continue to cause serious irreparable injury to Plaintiffs.

## COUNT 8: UNFAIR COMPETITION AND FALSE ADVERTISING - NY

148. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 127 as though fully set forth herein.

149. Plaintiffs own commercially valuable property rights in their name, image and likeness and commercial persona, derived through their own skill, experience and labor.

150. Defendants, through their actions, have misappropriated Plaintiffs' property rights, and the reputation and goodwill symbolized thereby, for their own commercial benefit, to the harm of

Plaintiffs' ability to control the commercial use of their name and image and to use and authorize others to use those valuable property rights.

151. Defendants' aforementioned acts constitute unfair competition and unfair or deceptive acts or practices in violation of the New York Unfair Trade Practices law (General Business Law §349-350, New York City Administrative Code § 20-700, § 20-701).

152. Plaintiffs have been damaged by the defendants' aforementioned acts and seek a preliminary and permanent injunction against Defendants, as well as all other remedies available under New York law, including but not limited to compensatory damages and exemplary damages.

## COUNT 9: UNFAIR COMPETITION - NY COMMON LAW

153. Paragraphs 1 through 152 are incorporated herein as though set forth in their entirety.

154. Plaintiffs own commercially valuable property rights in their name, image and likeness and commercial persona, derived through their own skill, experience and labor.

155. Defendants, through their actions, have misappropriated Plaintiffs' property rights, and the reputation and goodwill symbolized thereby, for their own commercial benefit, to the harm of Plaintiffs' ability to control the commercial use of their name and image and to use and authorize others to use those valuable property rights.

156. Aforementioned acts of Defendants constitute unfair competition and an infringement of plaintiff's common-law rights in "Moscow Cats Theatre" and "Cats Theater" marks.

157.    Plaintiffs have no adequate remedy at law and have continued to suffer irreparable harm and damage as a result of Defendants' aforesaid acts, which, if not enjoined, will cause additional injury and loss.

158. Plaintiffs seek a preliminary and permanent injunction against Defendants, as well as all other remedies available under the law, including but not limited to compensatory damages and exemplary damages.

## COUNT 10: UNJUST ENRICHMENT – NEW YORK COMMON LAW

159. Paragraphs 1 through 159 are incorporated herein as though set forth in their entirety.

160. Defendants, through their actions and for their own commercial benefit, have appropriated Plaintiffs' persona, goodwill and reputation without their consent, thereby obtaining a benefit that in equity and good conscience they should not have obtained or possessed because it rightfully belongs to Plaintiffs. Defendants have been enriched at Plaintiffs' expense under such circumstances that in equity and good conscience they ought not to retain.

161. Defendants have infringed Plaintiffs' rights as alleged herein with the intent to deceive the public into believing that Defendants' shows feature members of Kuklachev family, or are at least designed by, approved by, sponsored by or affiliated with Plaintiffs. Defendants' acts as alleged herein were committed with the intent to pass off and palm off defendants' goods (t-shirts, brochures, etc) and performances as those of Kuklachevs, and with the intent and actual results of deceiving and defrauding the public.

162. Plaintiffs seek a preliminary and permanent injunction against Defendants, as well as all other remedies available under the law, including but not limited to compensatory damages, attorneys' fees and exemplary damages.

## COUNT 11 - COPYRIGHT INFRINGEMENT

163. Paragraphs 1 through 163 are incorporated herein as though set forth in their entirety.

164. Defendants individually and through their employees, unlawfully and willfully copied all or part of Kuklachevs Moscow Cats Theatre's performances, including the key tricks, sketches,

themes, stage setup and design, performer's cast, costumes and outer appearance, and other major elements, in violation of Kuklachevs' copyright in these and other elements of the show.

165. The Defendants shows are strikingly similar and in large parts identical to Kuklachevs' shows exuding the same ''look and feel'' as Kuklachevs' copyrighted material.

166. Defendants unlawfully, willfully, and in violation of duties owed to Yuri Kuklachev, copied and (with intent to profit and further deceive the audiences), commercially utilized Kuklachevs' Moscow Cats Theatre's promotional materials, such as photographs and drawings, posters, t-shirts, brochures, video recordings of Kuklachevs' performances, and other materials, in violation of Kuklachevs' copyright in these materials.

167. Defendants unlawfully and willfully used a background scene decoration, developed and ordered by Kuklachev. The decoration portrays a view of Paris out of the clown-artist's studio. The decoration was designed and ordered by Kuklachev in Moscow, for his expected 2007 US performances.

168. The Defendants identically copied some promotional materials, such as T-shirts, key chains, and recordings of Plaintiffs' copyrighted performances sold at the entrance. Other materials, like Kuklachev's posters were insignificantly modified, such as by insertion of the new performance dates and locations of the infringing show.

169. The posters found in **exhibits B, C,** of this Complaint are just some of the many posters, the use of which by Defendants infringes Dmitri Kuklachev's copyright in the design of the poster, as well as in the arrangement of the photograph.

170. Yuri and Dmitri Kuklachevs have lost substantial revenue, and suffered great damage to their name and professional reputation from Defendants unlawful and willful copying of their copyrighted material.

171.   Defendants' performance of Kuklachevs' tricks and sketches diluted and continues to dilute American market for cat-show performances and serves to destroy the distinctiveness of Kuklachevs' copyrighted works.

172.   Defendants' copying of Plaintiffs' Performances, along with promotional materials and the use of such copied promotional materials in association with Defendants' copycat performances destroys the public's identification of the shows with Kuklachevs as Kuklachevs' exclusive property, thereby confusing the public and causing Plaintiffs to suffer irreparable damages, lost profits, and potential loss of opportunity to ever perform before American Audiences again.

173. Kuklachevs' performance of their own works is prejudiced by Defendants' copyright infringements.

## COUNT 12: TRADE DRESS INFRINGEMENT

174. Paragraphs 1 through 174 are incorporated herein as though set forth in their entirety.

175. Yuri Kuklachev is most widely recognized by American audiences in his role of imaginative and a bit sad clown-artist, the role he performed in the latest several US tours. For this most famous role, Kuklachev dresses in a very distinctive, but somewhat unusual costume for a clown. He wears  generally bright colorful clothing and oversized shoes, as befits a clown. However, the clothing style intentionally carries the notes of traditional European style, reminiscent of the age of romanticism, unusual for a clown.  Thus, Kuklachev usually appears before his audiences (and in ads), wearing a bow-tie and a tail-coat, with oversized and colored old-fashioned lapels.  Under the tail-coat is a frilled shirt (usually white), with frills on the chest, and extending from under the tail-coat cuffs.  The top of the pants is also of classical style, usually worn with the tail-coats, and requiring a wide girdle (usually not worn). The pants are of

bright color, usually yellow.   Towards the bottom, the pants are a little short, emphasizing oversized clown shoes.

176. On their US tour, Plaintiffs have adopted a particular design and a combination of colors to present their services/performances to the US public.  Thus, most advertising materials are in red and yellow colors, with some oranges and greens.  Particularly, most Kuklachevs' US advertisements feature a yellowish background of cats, performed in halftones.  One cat stands out from the crowd with bright green eyes.  The words "Moscow Cats Theatre" are performed in a particular distinctive style and unusual font.

177. Plaintiffs have adopted a particular dress, design and combination of features to produce a particular visual appearance for the purpose of presenting its services to the public.

178. Defendants have attempted to imitate Kuklachevs' particular dress, design and combination of features, copying all of above elements of Kuklachevs' costume and advertisement materials, in such a way as to mislead the public. [See **Exhibits B-E,** showing utilization of all of the above costume elements for a costume of Defendant Krasnolozhkin - Kuklachev's look-alike). Costumes of other performers of Kuklachev's Moscow Cats Theatre were also copied and utilized by Defendants.

179.   The multiplicity of similarities between Kuklachevs' copyrighted costumes and advertising materials and those produced and manufactured by Defendants evidence a conscious intent by Defendants to imitate and copy Kuklachevs and other performers of Kuklachev's Moscow Cats Theatre.

180. Defendants' use of color and combination of colors when copying and/or imitating Kuklachevs' posters evidences a conscious intent of Defendants to imitate and copy Kuklachev.

181.   Defendants' actions are intended and/or operate to confuse the public.

182.   Plaintiffs' sale of its own performances / works and derivative works is prejudiced by Defendants' imitation and copying of Plaintiffs, all to Plaintiffs' irreparable damage.

### COUNT 13: FRAUD

183. Paragraphs 1 through 183 are incorporated herein as though set forth in their entirety.

184. In 2005, Yuri Kuklachev's Moscow Cats Theatre brought an extensive assortment of necessary stage equipment and props into the US from Russia.  Some of the equipment was unique, and manufactured specifically for the Moscow Cats Theatre.

185. In late December 2006, in light of the great success of the tours, Defendant M. Gelfman asked Yuri Kuklachev to return to the US, tentatively in spring 2007 to continue US performances. Yuri Kuklachev agreed.

186. M. Gelfman then asked Kuklachev to leave all the scenic equipment in the US, for storage, under his supervision until Kuklachev comes back in the spring, in order to save the money, involved with transportation of the equipment.

187. Upon information and belief, at the time Defendant M. Gelfman made this representation to Kuklachev, M. Gelfman already had and was carrying out the plans to invite copycat performers to perform under Kuklachev's mark and likeness.  He thus knew that Kuklachev would be effectively foreclosed from performing in the US.  M. Gelfman knew that his statement about 2007 performances was false and that this false statement would induce reasonable reliance in Kuklachev and convince Kuklachev to leave the equipment with M. Gelfman.

188. In reliance on M. Gelfman's representation, Kuklachev left the equipment in the US under M. Gelfman's supervision.

189. In violation of the plaintiffs' rights, M. Gelfman and all other Defendants converted and utilized Kuklachev's equipment for Defendants' copycat performances.

190. Defendant Mark Gelfman's actions constitute fraud.

191. As a result of Defendant Mark Gelfman's fraud, Plaintiffs suffered damages in excess of $10,000,000.00

## COUNT 14: CONVERSION

192. Paragraphs 1 through 192 are incorporated herein as though set forth in their entirety.

193. As described above, Defendants assumed and exercised the right of ownership over equipment belonging to Kuklachevs to the exclusion of the owner's rights.

194. Defendants obtained the property illegally, by fraud.

195. Defendants' actions constitute conversion.

196. By reason of the above, the Plaintiffs have sustained money damages in the excess of $10,000,000.00

## COUNT 15: FRAUD AND OTHER INEQUITABLE CONDUCT IN DEFENDANTS' TRADEMARK APPLICATION, BARRING THE RIGHT TO REGISTRATION.

197.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 197 as though fully set forth herein.

198. Trademark Application Serial no. 77075635, was filed in the U.S. Patent and Trademark Office under the false allegation, made under oath by Defendant Mark Gelfman, that the "Moscow Cats Theatre" mark had been previously used by him in interstate commerce prior to application for said registration. In fact, Defendant Mark Gelfman alleged prior use of the mark as early as 1987 and 1990 (years correlating to the establishment of Kuklachev's first and only Cats Theatre in Moscow).

199. Defendant Mark Gelfman made said statement and representation fully knowing it was false in that the true fact was that no sales under said mark been made by Defendant Mark

Gelfman prior to application for registration. In fact, even the sample of use, submitted by Defendant Mark Gelfman, is a poster, that was utilized by Kuklachevs during their 2005-2006 tour, bearing a large photograph of Plaintiff Dmitri Kuklachev. Defendant Mark Gelfman's use of the Plaintiffs' mark during Kuklachev's 2005-2006 tour was limited to his role as Kuklachev's and Moscow Cats Theatre's promoter.

200. M. Gelfman's use and registration of the mark "Moscow Cats Theatre" falsely suggests a connection with Plaintiffs' names and identities.

201. M. Gelfman's use and registration of the mark "Moscow Cats Theatre" is without Plaintiffs' consent or authorization.

202. M. Gelfman is not (and was not, at the time of the filing of its application for registration) the rightful owner of the registered mark.

203. M. Gelfman's use of the mark dilutes the distinctive quality of Kuklachevs' famous marks.

204. M. Gelfman's use and registration of the mark "Moscow Cats Theatre" is geographically deceptive in that neither M. Gelfman, nor any of the defendants have a physical theater in Moscow.

205. As shown by the foregoing facts, and attached exhibits, Plaintiffs' family has obtained proprietary rights in the "Moscow Cats Theatre" mark that are prior to M. Gelfman's rights in the challenged mark. Such rights were obtained by prior use of the mark (including the use in promotion and nation-wide advertising of U.S. tours of Kuklachev's Moscow Cats Theatre) and by prior use analogous to trademark or service mark use.

206. M. Gelfman's continued use and registration of "Moscow Cats Theatre" is likely to cause, and has already caused great actual confusion, mistake and deception in that consumers are likely to believe that Defendants' services and products are Plaintiffs' services and products or

the services and products of a company that is sponsored, authorized or licensed by, or in some other way legitimately connected with, Plaintiffs.

207. M. Gelfman's continued use and registration of "Moscow Cats Theatre" does in fact, and has already caused large-scale actual confusion, mistake and deception in that consumers do believe that M. Gelfman's services and products are Plaintiffs' services and products or the services and products of a company that is sponsored, authorized or licensed by, or in some other way legitimately connected with, Plaintiffs or Plaintiffs' family.

208. Registration by M. Gelfman of "The Moscow Cats Theatre" mark (Application Serial no. 77075635) for use in connection with his services in international class 041, would cause great damage to Plaintiffs in that the prima facie evidentiary effect of such registration would impair even Plaintiffs right to descriptive use of said term.  Thus, authentic, famous, Moscow's Only Cats Theatre would have to refer to itself by some other inappropriate term, when it comes for another US tour, or most likely be unable to ever perform before American audiences again.

209. Plaintiffs have already been damaged by said false and fraudulent statements and Defendants trademark application filing in that Plaintiffs had to cancel their 2007-2008 US tour, and correspondingly loose performance income, sales and trademark value, all in the sum exceeding $10,000,000.00.   While M. Gelfman's trademark application is pending at USPTO, promoters are unwilling to undertake Kuklachev's Moscow Cats Theatre's promotion for fear of possible trademark infringement suits, all while Defendants' inferior copycat performances continue to saturate the market and dilute the mark.

210. Registration by M. Gelfman of "The Moscow Cats Theatre" mark (Application Serial no. 77075635) for use in connection with his services in international class 041 would cause further

monetary damages, damages to reputation, dilution of Plaintiffs' mark around the world, and be otherwise damaging to Plaintiffs.

211. M.Gelfman made false representation with the intent to induce the U.S. Patent and Trademark Office to issue a trademark registration.   For these reasons, Mark Gelfman's application for registration should be denied and all uses of the Moscow Cats Theatre mark or similar marks prohibited.

212. M. Gelfman's false representations, made with the intent to induce the U.S. Patent and Trademark Office to issue a trademark registration, render Defendant Mark Gelfman liable to Plaintiffs for their damages sustained in consequence thereof under 15 U.S.C.A. § 1120.

## COUNT 16: PRIMA FACIE TORT

213. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 213 as though fully set forth herein.

214. Defendants' aforementioned actions constitute prima facie tort under New York laws.

## ALLEGATION OF DAMAGE

1.By reason of Defendants' acts alleged herein and massive actual confusion the acts have caused, Plaintiffs have and will continue to suffer damage to business, reputation and good will and the loss of sales and profits Kuklachevs would have made but for Defendants' acts.

2. Defendants threaten to continue to do the acts complained of herein.  The Moscowcatstheatre.com website, controlled by defendants, promises "THE CATS WILL RETURN LATE 2008!"  Unless restrained and enjoined, Defendants will continue to do so, all to Kuklachevs' and real Moscow Cats Theatre's irreparable damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1. For judgment that:

    a.  Defendants have engaged in trademark infringement in violation of Section 32 of the Lanham Act, 15 USC 1114;

    b.  Defendants have engaged in unfair competition, false representation, false endorsement, false designation of origin and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 USC 1125(a);

    c.  Defendants have engaged in trademark dilution in violation of Section 43(c ) of the Lanham Act, 15 USC 1125(c);

    d.  Defendants Mark Gelfman and/or Gelfman International Enterprises, Inc. have engaged in cybersquatting in violation of Section 43(d) of the Lanham Act, 15 USC 1125(d);

    e.  Defendants have violated Plaintiffs' rights of privacy and publicity in violation of New York Civil Rights Law 50, 51 and New York common law;

    f.  Defendants have engaged in unfair competition and false advertising;

    g.  .Defendants have engaged in injury to business reputation and trademark dilution in violation of the laws of the State of New York;

    h.  Defendants are unjustly enriching themselves at the expense of Plaintiffs, in violation of New York common law;

    i.  Defendants have engaged in copyright infringement;

    j.  Defendants have engaged in trade dress infringement;

    k.  Defendants have engaged in fraud and/or conversion and/or prima facie tort;

    l.  Defendants have engaged in fraud in trademark application;

m. Defendants are jointly and severably liable for each and every of the aforesaid violations of the law

2.     For a preliminary and permanent injunction, enjoining and restraining Defendants, their successors and/or assigns, officers, directors, partners, agents, servants, employees, subcontractors, manufacturers, distributors, retailers, attorneys, affiliates, licensees, subsidiaries and related companies or entities and all others acting in concert or participation with them from (a) directly or indirectly making unauthorized use of the Plaintiffs' names, images or likeness, and the names "Cats Theater," "Moscow Cats Theatre," their foreign equivalents (such as "Teatr Koshek") or any other mark, word, or name confusingly similar to plaintiffs marks, for commercial or trade purposes;

(b) performing their copycat shows;

(c) directly or indirectly using the visual likeness of any member of Kuklachev's family;

(d) directly or indirectly imitating any member of Kuklachevs' family;

(e) making any use of the Domain Name or any other domain name incorporating any of the Plaintiffs' marks or otherwise referring to Plaintiffs without Plaintiffs' authorization;

(f) directly or indirectly using the phrases "Moscow Cats Theatre," "Cats Theatre," "Teatr Koshek" or any other marks, words or names similar to plaintiffs marks which are likely to cause confusion and (2) continuing any and all acts of unfair competition as herein alleged;

(g) making any misrepresentations or misleading statements concerning Plaintiffs, and/or endorsements or approval by Plaintiffs of any goods or services sold or distributed in commerce by or on behalf of any Defendant;

(h) using Yuri and/or Dmitri Kuklachev's likeness, including photographs and drawings thereof,

as well as the use of look-alikes in the performance and advertisement of Defendants' products and services; and

(i) assisting, aiding or abetting any other person or entity to engage in or perform any of the activities referred to herein.

3. For an order that:

a. All advertising materials, including posters, playbills, labels, signs , prints , packages, pins, t-shirts and advertisements in the possession of defendants bearing the mark "Moscow Cats Theatre," Plaintiffs' portraits, deceptive claims or references (such as "World's Only), or other statements suggesting a connection between Plaintiffs and Defendants, shall be delivered up and destroyed.

b. All of Defendants' internet advertisements, bearing the mark "Moscow Cats Theatre," Plaintiffs' portraits, deceptive claims or references (such as "World's Only), or other statements suggesting a connection between Plaintiffs and Defendants, shall be immediately removed. In cases, where the websites hosting such advertisements are not controlled by Defendants, Defendants must make reasonable efforts to contact administrators of such websites and request immediate removal of infringing material and present proof of such reasonable efforts to Plaintiffs.

4. For an order awarding Plaintiffs: (a) Defendants' profits, trebled, together with attorneys' fees and costs, to the full extent provided for by 15 USC 1117, Section 35 of the Lanham Act; (b) attorneys' fees under New York General Business Law 349 and (c) actual and punitive damages as provided for under 15 USC 1117, Section 35 of the Lanham Act, relevant New York statutes and the common law, and holding all Defendants jointly and severally liable for said damages.

5. For an order that the infringing Domain Name be transferred to Plaintiffs without future consideration;

6. For an order requiring Defendants to account to Plaintiffs for Defendants' unjustly received profits resulting from the foregoing acts;

7. For an order declaring that the commercial exploitation of the "facts" using Plaintiffs' name or identity is unlawful;

8. For an order under 15 U.S .C .A. § 1119, that the Commissioner of Patents and Trademarks deny the registration of Defendants' U.S. Trademark Application Serial no. 77075635.

9. For an order awarding exemplary damages, since Defendants knowingly used Plaintiffs' photographs, drawings and other likeness as is forbidden or declared to be unlawful by section fifty of Article 5 of the New York Civil Rights Law.

10. For an order awarding Plaintiffs costs of this action and reasonable attorneys' fees as this is an exceptional case.

11. For such other and further relief as the Court deems just and proper.

DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial on all counts.

DATED:        May 22, 2008            Respectfully submitted,

Gary Tsirelman P.C.

Julia Paskalova  JP 0950
Attorneys for Plaintiffs Yuri Kuklachev
and Dmitri Kuklachev
65 Jay Street, Third Floor
Brooklyn NY 11201
718 438 1200; 917 903 8392
Fax 718 438 883   E-mail: jpaskaloff@gtmdjd.com
gtsirelman@gtmdjd.com