UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Yuri Kuklachev, Dmitri Kuklachev,

                          Plaintiffs,
                                                08-CV-2214 (CPS)
          - against -

Mark Gelfman, Gelfman International          MEMORANDUM OPINION
Enterprises, Inc., Yanis Gelfman,            AND ORDER
Tribeca Performing Arts Center,
Ticketmaster.com, Palace of Fine Arts,
Wilkins Theater at Kean University,
Onlineseats.com, John Hancock Hall,
Gwinnett Center, Napa Valley Opera
House, LA's Wilshire Ebell's Theater,
Seattle Repertory Theater, Dmitry
Krassotkine, Yuri Potoski, Michael
Zlotnikov, Andrew Yankovis, Stanislav
Nemoy, Vladimir Krasnolozhkin, Vladimir
Anisimov,

                          Defendants.

-------------------------------------X

SIFTON, Senior Judge.

        Yuri Kuklachev and Dmitri Kuklachev ("plaintiffs") commenced

this action against defendants Mark Gelfman ("Gelfman"), Gelfman

International Enterprises, Inc. ("Gelfman Inc."), Yanis Gelfman

(collectively, the "Gelfmans"), Tribeca Performing Arts Center,

Ticketmaster.com, Palace of Fine Arts, Wilkins Theatre at Kean

University, Onlineseats.com, Vladimir Krasnolozhkin, Vladimir

Anisimov, Dmitry Krassotkine, Tillinger's Concierge, Inc.,[1]

Gwinnett Center, Napa Valley Opera House, The Ebell Operating

---

[1] The plaintiffs originally named John Hancock Hall as defendant.
However, the parties later stipulated and agreed that Tillinger's operated
John Hancock Hall, was served with the complaint, has answered the complaint,
is the real party in interest, and should be substituted for John Hancock
Hall. On February 2, 2009, I granted Tillinger's motion for judgment on the
pleadings, dismissing them from this action.

Company,[2] Seattle Repertory Theatre, Yuri Potoski, Michael Zlotnikov, Andrey Yankovis, Stanislav Nemoy, and the State of New Jersey, on June 2, 2008. Plaintiffs make a copyright claim, several trademark claims under the Lanham Act, and claims for violation of privacy and publicity rights, injury to business reputation and trademark dilution, unfair competition, unjust enrichment, fraud, conversion, and tort under New York State Law.

Now before the Court is a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the Napa Valley Opera House ("NVOH") and the Palace of Fine Arts League ("PFA") (for this purposes of this motion, collectively, "defendants"). For the reasons stated below, the motion to dismiss for lack of personal jurisdiction is granted, and the motion to dismiss for failure to state a claim is denied as moot.

## BACKGROUND

The following facts are taken from the parties' submissions in connection with this motion. Disputes are noted.

*The Parties*

Yuri Kuklachev ("Kuklachev") is a Russian national who tours the world with his troupe of cats and clowns, putting on

---

[2]This party was sued under the name LA's Wilshire Ebell's Theater, but that is a description of the location, not a business entity. The Ebell Operating Company owns and operates the Wilshire Ebell Theater.

theatrical performances. Kuklachev performs in the shows, manages the troupe, and organizes performances. Dmitri Kuklachev is Yuri Kuklachev's son, and is the artistic director and star performer of the troupe.

PFA is operated by the Palace of Fine Arts League, a non-profit corporation organized under the laws of California and located in San Francisco, California. Declaration of Kevin O'Brien at ¶ 2 ("O'Brien Decl.). PFA was built in 1970 and serves the local community through the arts. *Id.* PFA is a rental theater, and does to produce its own shows. *Id.* at ¶ 3. PFA has six to eight full-time employees and twenty to thirty regular, but less than full-time, employees. *Id.* PFA does not solicit business, maintain any offices, or own property in the New York State. *Id.* at ¶ 5, 7. PFA does not engage in any form of advertizing. *Id.* Instead, those who rent the theater decide when and how to advertise. *Id.* Tickets to performances are sold primarily by third-party vendors, who are chosen at the discretion of the show's producers. *Id.* at ¶ *6.* PFA maintains a passive website; nothing is offered for sale on the site. *Id.* at ¶ 8.

NVOH is a non-profit corporation organized under the laws of California and located in Napa, California, operating out of a National Historic Landmark first constructed in 1879. Declaration of Larry Tsai at ¶ 2 ("Tsai Decl.") Community leaders and other

citizens organized and opened NVOH in 2003. *Id.* The
organization's mission is to enrich the cultural experience of
the local community through the arts while preserving a historic
theater. *Id.* NVOH is a small presenting venue, with eleven full-
time employees. *Id.* at ¶ 3. NVOH sells tickets to performances at
the box office located at 1030 Main Street, Napa, California, and
over the phone. *Id.* at ¶ 8. Third-party vendors provide software
that enables NVOH to sell tickets over the internet through the
NVOH website. *Id.* NVOH does not solicit business in New York
State, and directs no advertising towards residents of New York
State. *Id.* at ¶ 5. NVOH uses only local sources for advertising.
*Id.* NVOH sends no unsolicited brochures or other materials to
residents of New York State, nor does it maintain any offices in
the State, nor does it own any property or any other assets in
the State, including bank accounts. *Id.* at ¶ 7, 9.

*Alleged Infringement*

Plaintiffs allege that they hired defendant Gelfman, Inc. to
promote a national tour of the plaintiffs' Moscow Cats Theatre in
2005 and 2006. Complaint at ¶ 7 ("Compl."). In early 2007, upon
plaintiffs' return to Russia, plaintiffs allege that Gelfman
hired other performers to perform 'copycat' shows, imitating
plaintiffs' tricks, costumes, scenic equipment, advertisements,
and personas, and that those shows took place in venues across
the United States. *Id.* at ¶ 10. Plaintiffs have brought suit

against the Gelfmans and a number of venues where the Gelfmans' cat circus was allegedly performed. NVOH, PFA, and Tillinger's are three venues that plaintiffs claim hosted the allegedly infringing shows.

*Procedural History*

The complaint was filed on June 2, 2008. On October 24, 2008, NVOH and PFA moved to dismiss the complaint. On November 18, 2008, Tillinger's moved for judgment on the pleadings. On December 22, 2008, I granted plaintiffs' motion for a preliminary injunction against defendants Mark Gelfman, Gelfman, Inc., and Yanis Gelfman, and denied the motion as to all other defendants.

**DISCUSSION**

*Jurisdiction*

"The requirement that federal courts have personal jurisdiction over the litigants before them arises from an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Arar v. Ashcroft*, 532 F.3d 157, 173 (2d Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174 (1985) (internal quotation marks omitted). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id.* at 173. District courts resolving issues of personal jurisdiction engage in a two-part

analysis. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). "In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Second, "courts must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Bank Brussles*, 171 F.3d at 784 (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). Due process requires that an out-of-state defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316; 66 S. Ct. 154; 90 L. Ed. 95 (1945).

New York State's long-arm statute states, in pertinent part, that personal jurisdiction is permitted over a non-domiciliary who, in person or through an agent:

(1) transacts any business within the state...; or

(2) commits a tortious act within the state...; or

(3) commits a tortious act without the state causing injury to person or property within the state... if he

(i) regularly does or solicits business, or engages in

any other persistent course of conduct, or derives

substantial revenue from goods used or consumed or

services rendered, in the state, or

(ii) expect or should reasonably expect the act to have

consequences in the state and derives substantial

revenue from interstate or international commerce; or

(4) owns, uses or possesses any real property situated
within the state.

N.Y. CPLR 302(a).

In their complaint, plaintiffs claim that the Court has
personal jurisdiction over defendants by virtue of the fact that
defendants "regularly solicit business in this state" and "have
committed a tortious act within the state by committing, among
other acts, acts of infringement and unfair competition in this
state." Compl. ¶ 41. These allegations invoke § 302(a)(2) and §
302(a)(3). Generally, "[t]o subject non-residents to New York
jurisdiction under § 302(a)(2) the defendant must commit the tort
while he or she is physically in New York State." *Bensusan
Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) (quoting
*Carlson v. Cuevas*, 932 F. Supp. 76, 80 (S.D.N.Y. 1996)).
Furthermore, section 302(a)(3) "only confers jurisdiction if
plaintiffs sustained an injury within the State of New York."
*Weiss v. Greenburg, Traurig, Askew, Hoffman, Kpoff, Quentel &
Wolff, P.A.*, 85 A.D.2d 861, 861; 446 N.Y.S.2d 447 (1981).

Plaintiffs have not alleged that defendants were physically present in the State, nor have they alleged that they sustained an injury within the State of New York as a result of NVOH or PFA's actions. There is no personal jurisdiction over the defendants pursuant to § 302(a)(2) or (a)(3).

In their response to the motion by NVOH and PFA, plaintiffs allege that defendants transacted business within the state, asserting jurisdiction pursuant to § 302(a)(1). Jurisdiction under CPLR § 302(a)(1) may exist "even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997). Long-arm jurisdiction has been found where commercial actors used "electronic and telephonic means to project themselves into New York to conduct business transactions." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65; 850 N.E.2d 1140; 818 N.Y.S.2d 164 (2006).

Plaintiffs acknowledge that they do not know whether the contracts were negotiated, drafted, or signed in New York, Pl. Reply at 4, and have presented no further evidence that NVOH or PFA transacted business in the State. They have failed to establish jurisdiction pursuant to § 302(a)(1). Even if Gelfman was in New York when he arranged for his allegedly infringing

performances to take place at NVOH and PFA, it was he who solicited defendants, not the other way around. Plaintiffs have failed to establish that defendants "projected themselves" into New York or availed themselves of the New York forum.

Plaintiffs allege that defendants NVOH and PFA advertised allegedly infringing performances on in-flight magazines distributed on flights from New York to San Francisco. Plaintiffs' only evidence for this claim is an affidavit by Gregory Goreshnik, who states that, in the winter of 2007, he saw a "big advertisement" for the Moscow Cats Theatre in an in-flight magazine during a flight from New York to California, which stated that the Moscow Cats Theater would be performing in San Francisco in May. Goreshnik Aff. at ¶ 7. The affidavit provides no details about the names of the theaters listed in the advertisement. Nor does the affidavit indicate that NVOH and PFA paid for or were otherwise responsible for the advertisement. Plaintiffs also allege that the San Francisco shows were advertised in New York on New York TV channels. Plaintiffs cite no evidence for this claim. Plaintiffs have failed to establish that NVOH or PFA targeted residents of New York with advertisements concerning the allegedly infringing show.

Plaintiffs further claim that the PFA had a continuing business relationship with defendant Gelfman after the lawsuit commenced. As evidence, they provide a printout of the PFA event

list, apparently printed on October 27, 2008, which includes a
listing for an unnamed event produced by Gelfman, Inc., to be
shown on December 1, 2008. P. Reply, Ex. 3. Plaintiffs offer no
evidence that this event was booked after the commencement of the
lawsuit, nor do they explain the relevance of such a booking to
the question of jurisdiction.

Plaintiffs suggest that the Gelfmans were agents of NVOH and
PFA "when plaintiffs' rights were violated," citing a case where
a New York court found personal jurisdiction over an out-of-state
defendant who placed certain auction bids through an agent who
was present in New York. *See Parke-Bernet Galleries, Inc. v.
Franklyn*, 26 N.Y.2d 13; 308 N.Y.S.2d 337; 256 N.E.2d 506 (1970).
There is no evidence that the Gelfmans acted as agents for NVOH
or PFA for any purpose in New York.

Defendants do not have the minimum contacts with New York
State required to confer jurisdiction. Defendants have not
solicited business in the State or targeted New Yorkers with
advertisements. Defendants have committed no tort in New York.
This Court lacks personal jurisdiction over defendants NVOH and
PFA. Because I dismiss the complaint against NVOH and PFA for
lack of jurisdiction, I need not consider the motion to dismiss
for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Napa Valley Opera House and

Palace of Fine Arts' motion to dismiss pursuant to Rule 12(b)(2)

is granted, and the motion to dismiss pursuant to Rule 12(b)(6)

is denied as moot. The Clerk is directed to transmit a copy of

the within to all parties and the assigned Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, New York
          February 5, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge