```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Yuri Kuklachev, Dmitri Kuklachev,

                        Plaintiffs,
                                             08-CV-2214(CPS)(VVP)
        - against -

Mark Gelfman, Gelfman International
Enterprises, Inc., Yanis Gelfman,            MEMORANDUM
Tribeca Performing Arts Center,              OPINION
Ticketmaster.com, Palace of Fine Arts,       AND ORDER
Wilkins Theater at Kean University,
Onlineseats.com, John Hancock Hall,
Gwinnett Center, Napa Valley Opera
House, LA's Wilshire Ebell's Theater,
Seattle Repertory Theater, Dmitry
Krassotkine, Yuri Potoski, Michael
Zlotnikov, Andrew Yankovis, Stanislav
Nemoy, Vladimir Krasnolozhkin, and
Vladimir Anisimov,

                        Defendants.

-------------------------------------X
```
SIFTON, Senior Judge

    Yuri Kuklachev and Dmitri Kuklachev ("plaintiffs") commenced this action against defendants Mark Gelfman, Gelfman International Enterprises, Inc. ("Gelfman, Inc."), Yanis Gelfman (the "Gelfmans"), various theater venues, various theater performers, Tribeca Performing Arts Center ("Tribeca"), and Tillinger's Concierge, Inc. ("Tillinger's"),[1] on June 2, 2008. Plaintiffs alleged trademark infringement under the Lanham Act, § 43(a), 15 U.S.C. § 1125(a), as well as other federal and state

---

[1] Plaintiffs originally named John Hancock Hall as the defendant in the complaint. The parties agreed that Tillinger's was the real party in interest, because John Hancock Hall is a location, not an entity, and Tillinger's was substituted by stipulation on December 16, 2008.

law claims, in connection with allegedly infringing performances conducted by Gelfman and Gelfman Inc. Now before the Court are motions by the Gelfmans to set aside the Clerk's entry of default against them in favor of Tillinger's and Tribeca, and a motion by Tillinger's, joined by Tribeca, seeking default judgments against the Gelfmans.[2] For the reasons stated below, the motions to set aside the entries of default are granted, and the motions for default judgment are denied.

## BACKGROUND

The following facts are taken from the record the parties' submissions in connection with this motion.

Plaintiffs filed their complaint on June 2, 2008. On July 17, 2008, Tribeca answered the complaint and asserted cross-claims against the Gelfmans for contractual indemnification, common law indemnification, and contribution. On August 6, 2008, Tillinger's answered the complaint and asserted cross-claims against the Gelfmans for contractual indemnification, common law

---

[2] Tillinger's made a motion for default judgment, in which Tribeca sought permission to join. Defendant Gelfmans opposed Tribeca's joining of the motion, on the ground that Tribeca's request must be stayed pending the Court's determination of the Gelfman's motion to set aside the Clerk's default. The Gelfmans have offered no reason why these motions cannot be considered simultaneously. The Gelfmans further argue that Tribeca's request seeks to bypass the requirement of Federal Rule of Civil Procedure 55(b)(2) for service with written notice of the application before the matter is taken on submission. Tribeca filed its letter seeking to join Tillinger's motion on February 11, 2009. The Gelfmans have had an opportunity to respond, and have done so by letter dated February 12, 2009. There is no violation of Rule 55 here. Tribeca is permitted to join Tillinger's motion for default judgment.

indemnification, and contribution. The defendants failed to timely answer or otherwise respond to the cross-claims by Tillinger's and Tribeca. On October 28, 2008, Tillinger's requested that the clerk enter default against the Gelfmans. On October 29, 2009, the Clerk entered a default in favor of Tillinger's. On October 30, 2008, Tribeca requested that a default be entered. On October 31, 2008, the Gelfmans answered Tribeca's cross-claims.

On January 29, 2009, three months after the Clerk's entry of default in favor of Tillinger's, the Gelfmans filed a motion for extension of time to file answers to cross-claims by several co-defendants, including Tillinger's, and simultaneously filed an answer to Tillinger's cross-claims. On February 6, 2009, the Clerk entered a default in favor of Tribeca. On February 11, 2009, Tribeca sought the Court's permission to join Tillinger's motion for default judgment against the Gelfmans.

In a letter dated August 8, 2008, counsel for Gelfman, Inc. stated to counsel for Tribeca that Gelfman, Inc. would defend and indemnify Tribeca in the present lawsuit "without any reservation of rights." Letter from Tribeca, February 9, 2009, Attachment 1. The letter further stated that Gelfman, Inc. had filed a motion to dismiss, and requested that Tribeca's counsel forward a letter authorizing attorneys for Gelfman, Inc. to represent Tribeca in this case. *Id*. The claims were submitted to Gelfman, Inc.'s

insurance carrier, but there has yet to be a final determination from the carrier as to coverage for the defendant venues. Letter from the Gelfmans, January 29, 2009 ("Gelfman Letter").

In October and November of 2008, counsel for Tillinger's conducted preliminary discussions with James Woods, prior counsel for the Gelfmans, in an effort to resolve Tillinger's crossclaims and application for Certificate of Default. Sunshine Aff. at ¶ 6. By email of October 30, 2008, Mr. Woods acknowledged the entry of default by the Clerk. *Id*. No resolution was reached between Tillinger's and the Gelfmans. *Id*. The claims were submitted to Gelfman, Inc.'s insurance carrier, but there has yet to be a final determination from the carrier as to coverage for the defendant venues. Gelfman Letter.

**DISCUSSION**

The Gelfmans move to set aside the Clerk's entry of default in favor of Tillinger's and Tribeca. Tillinger's and Tribeca move for entry of default judgments against the Gelfmans. These applications will be considered in turn.

**A. Motion to Vacate Clerk's Entry of Default**

As a preliminary matter, the Gelfmans argue that the Clerk should not have entered the default in the first place. The Clerk must enter a default when the defaulting party has "failed to plead or otherwise defend." Fed.R.Civ.Pro. 55(a). The Gelfmans

state that they have mounted a vigorous defense to plaintiffs' claims, including challenging the imposition of liability on defendant venues. The Gelfmans' efforts to defend themselves against plaintiffs' allegations do not constitute "defending" against cross-claims by Tillinger's and Tribeca, which is the focus of the rule.[3] There is no evidence that the Clerk's entry of default was improper.

The Court may set aside an entry of default for "good cause."[4] Fed.R.Civ.Pro. 55(c). To determine if good cause exists, a court must evaluate: "(i) the willfulness of the default, (ii) the prejudice to the adversary if the default is set aside, and (iii) whether the defendants present a meritorious defense." *Holford USA v. Harvey*, 169 F.R.D. 41, 44 (S.D.N.Y. 1996) (citing *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983). There is a "strong polic[y] favoring the resolution of genuine disputes on their merits," and "doubts are to be resolved in favor of a trial on the merits." *Traguth*, 710 F.2d at 94. Even if one factor weighs against vacating the default, if the other factors support it, the presumption in favor of resolution on the merits requires

---

[3] A contrary finding would permit a defendant in a multi-defendant case to ignore all cross-claims by other defendants and simply rely on its efforts against plaintiffs to shield it from default.

[4] The "good cause" standard for setting aside entry of default, pursuant to 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment under Rule 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). The Rule 55(c) standard is less rigorous because the entry of default is akin to an interlocutory order, whereas a default judgment has the force of a final judgment. *See, e.g., Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 335 (2d Cir. 1986).

that the court vacate the default. *See Grant v. City of New York*, 145 F.R.D. 325, 327 (S.D.N.Y. 1992). Prejudice to the party seeking the default is not required in order to deny a motion to vacate the default; a "district court... has discretion to deny the motion to vacate if it is persuaded that the default was willful and is unpersuaded that the defaulting party has a meritorious defense." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

*1. Willfulness*

Willfulness is "conduct that is more than merely negligent or careless." *SEC*, 137 F.3d at 738 (citing *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (default due to filing mistake by defendant's in-house counsel's clerk, held not willful)). Willfulness may be found "where the moving party [has] apparently made a strategic decision to default." *American Alliance Ins. Co.*, 92 F.3d at 60 (citing *United States v. Erdoss*, 440 F.2d 1221 (2d Cir. 1971)).

Tillinger's and Tribeca argue that the Gelfmans' default was willful, because the Gelfmans were aware of the cross-claims and of their obligation to file a response, and their failure to respond was neither negligent nor inadvertent. In response, the Gelfmans assert that they have been attempting to secure insurance coverage for Tillinger's and Tribeca and have filed a motion to dismiss against plaintiffs. The Gelfmans offer no

explanation or authority as to how their pursuance of insurance coverage justifies their failure to answer the cross-claims. Instead, they aver that their inaction was due to their commitment to resolving this case without litigation. A desire to avoid litigation cannot provide an excuse for failing to satisfy a party's obligations in litigation. The Gelfmans stress the fact that they vigorously defended against plaintiffs' claims by filing a motion to dismiss and various other motions, but that does not address the issue of the Gelfmans' position *vis* Tillinger's and Tribeca. It appears that the Gelfmans took a calculated risk that the case would be resolved in their favor or covered by their insurance carrier. Because the Gelfmans' failure to respond to the cross-claims was the result of a strategic decision, their actions were willful. *See American Alliance Ins. Co.*, 92 F.3d at 60 ("a party who makes an informed choice will not be relieved of the consequences when it subsequently develops that the choice was unfortunate."). This supports a denial of the motion to vacate default.

*2. Prejudice*

In order for a party to demonstrate prejudice in the delay caused by lifting the default and permitting the litigation to continue, the party must show "the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion - circumstances that make it more difficult for

plaintiff to prosecute its case." *Roberts v. Keith*, Copy. L. Rep. (CCH) P29,456, at *15 (S.D.N.Y. 2007) (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Tillinger's and Tribeca have not made any allegations as to evidence, discovery, or fraud. Instead, Tillinger's and Tribeca argue that they will be prejudiced by the lifting of the default, since they will be forced to continue to incur legal fees and other expenses in their efforts to pursue indemnification claims on which it will likely prevail. Tillinger's and Tribeca offer no authority for the contention that the continued payment of legal fees constitutes prejudice. The lack of prejudice weighs in favor of the motion to vacate default.

*3. Defenses*

"A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) (internal citation omitted).

The Gelfmans claim that the agreement between themselves and Tillinger's was signed on December 12, 2005, a date occurring two years before the performances by the Gelfmans that are the subject of plaintiffs' suit. Tillinger's cross-claim against the

Gelfmans confirms this. *See* Tillinger's Answer, Cross-Claims at ¶ 1. In 2005 and 2006, the Gelfmans promoted a series of performances by the plaintiffs in this action, which are not the subject of this suit. Plaintiffs have alleged that, starting in 2007 and continuing into the start of 2008, the Gelfmans stole their material and put together their own show, which toured around the country. The 2007 performances had no connection to the December 12, 2005 contract between Gelfman, Inc. and Tillinger's. Plaintiffs' suit does not arise out of the 2005 and 2006 performances; therefore, if it is the case that the Gelfmans did not cause any allegedly infringing performances to be held at the Tillinger's venue in 2007 or 2008, the Gelfmans have not taken any action with respect to Tillinger's that has exposed Tillinger's to liability. This is a complete defense to the suit.

Tribeca's agreement with the Gelfmans included the following clause: "User agrees to indemnify and hold harmless [Tribeca] against all claims and demands resulting in a judgement, including liabilities for penalties and reasonable attorney's fees thereof arising out of use and occupancy of the scheduled event." Tribeca's Answer to Complaint, Ex. A, at § 10.1A. The agreement on its face only calls for indemnification when a suit against Tribeca results in a judgment. If plaintiffs do not succeed in obtaining a judgment against Tribeca, it appears that the Gelfmans will have no obligation to indemnify Tribeca for

attorneys fees or any other costs. This is a complete defense to Tribeca's cross-claim.

The Gelfmans have presented meritorious defenses to both sets of cross-claims, which weighs strongly in favor of vacating the default.[5]

*4. Disposition*

Although the Gelfmans' default was willful, Tillinger's and Tribeca have failed to show that there will be any prejudice resulting from vacating the defaults. In each case, the Gelfmans have presented evidence which, if proven at trial, would constitute a complete defense. Therefore, the defaults are vacated.

**B. Motion for Default Judgment**

Pursuant to local rule, a party seeking a default judgment must file a motion that includes: (1) the clerk's certificate of default; (2) a copy of the claim to which no response has been made; and (3) a proposed form of default judgment. Local Civil Rule § 55.2. Because the entries of default are vacated,

---

[5] In addition to their arguments regarding defenses, the Gelfmans point out that under the federal rules, "[i]f an action involves an unusually large number of defendants, the court may, on motion or on its own, order that... any crossclaim, counterclaim, avoidance, or affirmative defense in those pleadings and replies to them will be treated as denied or avoided by all other parties." Fed.R.Civ.Pro. 5(c)(1)(B). Defendants argue that because this case has twenty named defendants, "the Federal Rules envision leniency and suspension of the requirement of a responsive pleading." Gelfman Letter. The fact that Rule 5(c) permits a Court to order various claims to be treated as denied or avoided does not justify the Gelfmans' behavior in this case. The Court did not issue a Rule 5(c) order, nor did the parties request one; therefore, the obligation remained to respond to pleadings as required by the Rules.

Tillinger's and Tribeca cannot satisfy the requirements for default judgment.

### CONCLUSION

For the reasons stated above, the Gelfmans' motions to vacate the entry of default against them are granted, and the motions by Tillinger's and Tribeca for default judgments are denied. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated:   Brooklyn, New York
         February 26, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge