UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Yuri Kuklachev, Dmitri Kuklachev,

                    Plaintiffs,
                                          08-CV-2214(CPS)(VVP)
          - against -

Mark Gelfman, Gelfman International
Enterprises, Inc., Yanis Gelfman,        MEMORANDUM
Tribeca Performing Arts Center,          OPINION
Ticketmaster.com, Palace of Fine Arts,   AND ORDER
Wilkins Theater at Kean University,
Onlineseats.com, John Hancock Hall,
Gwinnett Center, Napa Valley Opera
House, LA's Wilshire Ebell's Theater,
Seattle Repertory Theater, Dmitry
Krassotkine, Yuri Potoski, Michael
Zlotnikov, Andrew Yankovis, Stanislav
Nemoy, Vladimir Krasnolozhkin, and
Vladimir Anisimov,

                    Defendants.

-------------------------------------X
SIFTON, Senior Judge


     Yuri Kuklachev and Dmitri Kuklachev ("plaintiffs") commenced

this action against defendants Mark Gelfman, Gelfman

International Enterprises, Inc. ("Gelfman Inc."), Yanis Gelfman

(collectively, the "Gelfmans"), several performance venues, two

ticket outlets, Yuri Pototski ("Pototski"), Michael Zlotnikov

("Zlotnikov"), and Dmitry Krassotkine ("Krassotkine"), on June 2,

2008. Plaintiffs make the following claims in their complaint

against each of the defendants: (1) federal trademark

infringement under the Lanham Act, 15 U.S.C. § 1114; (2) false

representation under the Lanham Act, 15 U.S.C. § 1125(a); (3)

unfair competition and false designation under the Lanham Act, 15 U.S.C. § 1125(a); (4) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c); (5)cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1125(d); (6) violation of privacy and publicity rights under the New York Civil Rights Law, Article 5, § 50 and § 51, N.Y. CLS Civ. R. § 50, 51; (7) injury to business reputation and trademark dilution under N.Y. GBL § 360-L; (8) unfair competition and false advertizing under the New York Unfair Trade Practices Law, GBL § 349-50 and New York City Administrative Code § 20-700, § 20-701; (9) unfair competition under New York common law; (10) unjust enrichment under New York common law; (11) copyright infringement; (12) trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a); (13) fraud; (14) conversion; (15) fraud in trademark application;[1] and (16) prima facie tort.

Now before the Court is a motion for judgment on the pleadings, or, in the alternative, for summary judgment, filed on behalf of defendants Yanis Gelfman, Pototski, Zlotnikov,[2] and Krassotkine (for the purposes of this motion, "defendants"), on the ground that they were not responsible for the activities complained of by plaintiffs. For the reasons stated below, the

---

[1]Alleged against Mark Gelfman only.

[2]On March 17, 2009, plaintiffs agreed to voluntary dismissal of defendant Zlotnikov.

motion for judgment on the pleadings is granted.[3]

## BACKGROUND

Familiarity with prior decisions in this case is presumed. The following facts are drawn from the complaint, which must be taken as true for the purpose of the motion for judgment on the pleadings, and the parties' submissions in connection with this motion. Disputes are noted.

*The Parties*

Yuri Kuklachev ("Kuklachev") is a Russian national who tours the world with his troupe of cats and clowns, putting on theatrical performances. Kuklachev performs in the shows, manages the troupe, and organizes performances. Dmitri Kuklachev is Yuri Kuklachev's son, and is the artistic director and star performer of the troupe.

Defendant Mark Gelfman is the president of Gelfman Inc., a promotional and management business for entertainments. Yanis Gelfman is Mark Gelfman's son.

Defendants Pototski and Krassotkine were crew members in the production of the allegedly infringing show.

---

[3]Because defendants are entitled to judgment on the pleadings, I do not consider the alternative motion for summary judgment.

*Factual Background*

In the early 1970's, plaintiff Kuklachev, a well-recognized clown, became known for public entertainments performed with his troupe of cat performers and clowns. Complaint at ¶ 44 ("Compl."). Rather than training the cats to perform tricks, Kuklachev selected his cats for each role based on their individual skills and preferences, much like actors in a theater. *Id.* at ¶ 45. By the mid-1970's, Kuklachev's cat performances were a recognized success in various countries and in the United States. *Id.* at ¶ 46.

In 2005 and 2006, Kuklachev brought his performance to the United States for an extended tour, during which there were numerous successful performances, all under the "Moscow Cats Theatre" name (the "Kuklachev Show") *Id.* at ¶ 50. For these tours, Kuklachev hired Gelfman, Inc. to assist the plaintiffs in arranging and marketing their performances. *Id.* at ¶ 59.

In early 2007, plaintiffs began planning another tour of the Moscow Cats Theatre in the United States, expecting to continue their cooperation with Gelfman, Inc. *Id.* at ¶ 62. At that time, the plaintiffs learned that the Gelfmans were already producing cat-based theatrical performances in the United States under the name "Moscow Cats Theatre." *Id.* at ¶ 67. The performances conducted by the Gelfmans (the "Gelfman Show") are similar in nature to the ones performed by plaintiffs, using similar

promotional methods. *Id.* at ¶ 74. For their performances,
defendants conducted an advertising campaign that included the
terms "Moscow Cats Theatre" and "Moscow Cats" in conjunction with
plaintiffs' likenesses and images and plaintiffs' Moscow Cats
Theater promotional materials. Defendants used a poster showing
an image of Dmitri Kuklachev with a cat doing a "front-paw stand"
on his hand[4] to advertize the 2007 Los Angeles and San Francisco
tours of the allegedly infringing show. *Id.* at ¶ 71. This poster
also contained the words "World's Only" in front of the term
"Moscow Cats Theatre." *Id.* at ¶ 72. Additional posters and other
performance-related materials bear portraits of Kuklachev and
other references to plaintiffs. *Id.* at ¶ 73. The defendants sold
copies of promotional materials, including T-shirts, key chains,
and recordings of plaintiffs' performances, developed by
plaintiffs. *Id.* at ¶ 168. These advertising and promotional
materials caused actual confusion among the members of the
audience, who thought that Kuklachev and his troupe were
performing in Gelfman's shows. *Id*. at ¶ 69.

According to the complaint, Yanis Gelfman was the general
manager of the allegedly infringing show, *id*. at ¶ 21,
Krassotkine was listed on Gelfman, Inc.'s website as "press
representation, *id*. at ¶ 25, and Pototski was a director of the

---

[4] Plaintiffs consider this to be one of their signature tricks.
Declaration of Dmitri Kuklachev at ¶ 20.

show, *id*. at ¶.


*Procedural History*

The complaint was filed on June 2, 2008. On August 4, 2008, defendant Gelfmans filed a motion to dismiss. On October 29, 2008, plaintiffs sought an entry of default against Pototski, and Krassotkine, among others, for failure to answer or otherwise respond to the complaint. On October 30, 2008, Pototski, and Krassotkine answered the complaint, and on March 16, 2009, plaintiffs and defendants stipulated that the default against Pototski and Krassotkine be vacated. Plaintiffs' motion for a preliminary injunction against all defendants was granted as to the Gelfman defendants on December 22, 2008. On February 2, 2009, Yanis Gelfman, Pototski, and Krassotkine filed a motion for judgment on the pleadings, or, in the alternative, summary judgment. On February 26, 2009, the Gelfman defendants' motion to dismiss was granted with respect to three claims and denied as to all others, and the Gelfman defendants' motion to stay proceedings and compel arbitration was granted with respect to two claims and denied as to all other claims. On March 12, 2009, the Gelfman defendants answered the complaint and asserted cross claims. On March 16, 2009, plaintiffs stipulated to the dismissal of Zlotnikov.

## DISCUSSION

### I. Standard for Judgment on the Pleadings

In deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion to dismiss under Rule 12(b)(6). *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). Indeed, conclusory allegations "will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1970; 550 U.S. 544; 167 L. Ed. 2d 929 (2007). Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI*

*Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007)

(applying the standard of plausibility outside *Twombly*'s anti-

trust context), it must "amplify a claim with some factual

allegations... to render the claim plausible." *Iqbal v. Hasty*,

490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original)

(holding that the plaintiff's complaint adequately alleged the

personal involvement of the Attorney General because it was

plausible that officials of the Department of Justice would be

aware of policies concerning individuals arrested after 9/11).

The complaint must provide "the grounds upon which [the

plaintiff's] claim rests through factual allegations sufficient

'to raise a right to relief above the speculative level.'" *ATSI

Commc'ns*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S.Ct. at

1965).


**II. The Complaint Does not State a Claim against Individual**

**Defendants**[5]

The complaint states that Yanis Gelfman was manager of the

---

[5]In a recent decision, I denied a motion to dismiss filed on behalf of
Mark Gelfman, Gelfman, Inc., and Yanis Gelfman with regard to eleven of the
sixteen claims in the complaint. The standard for judgment on the pleadings
being the same as that for a motion to dismiss, it first appears that the
motion by Yanis Gelfman for judgment on the pleadings should be denied as
improperly relitigating issues already decided. However, neither party's
papers submitted for the motion to dismiss discussed the role played by Yanis
Gelfman in the alleged infringement, nor did my decision distinguish between
Yanis Gelfman and Mark Gelfman when considering liability. Furthermore, the
motion for judgment on the pleadings was filed prior to the decision on the
motion to dismiss. Because the question of whether plaintiffs have alleged
sufficient facts against Yanis to hold him individually liable has not
previously been considered, it is addressed here.

allegedly infringing show, that Pototski was a director, and that Krassotkine was the press secretary. Other than these allegations as to defendants' role in the allegedly infringing show, there are no individual allegations against Pototski, Krassotkine and Yanis Gelfman in the complaint, nor can any further allegations against these defendants be inferred. Defendants argue that these allegations are insufficient to state a claim against them.

Plaintiffs confine their arguments in opposition to the claims of false advertising, trademark infringement, and copyright infringement. Plaintiffs additionally assert that defendants are liable as employees of Mark Gelfman and Gelfman Inc., who they allege were primarily responsible for the infringement. Plaintiffs make no allegation that Pototski, Krassotkine, and Yanis Gelfman knew that Gelfman, Inc. and Mark Gelfman were not authorized to use the tricks, "Moscow Cats Theatre" mark, and photographs belonging to plaintiffs. Nor have they alleged that these defendants were active, conscious participants in any allegedly infringing activities. As such, plaintiffs have failed to make out a claim against these defendants.

*1. Trademark Infringement*

Plaintiffs assert that defendants should have determined whether Mark Gelfman was authorized to use the "Moscow Cats

Theatre" mark and associated trademarks before agreeing to
perform work for him on the allegedly infringing show, which
amounts to a contributory infringement claim.

   A manufacturer or distributor that induces another to
infringe or that continues to supply its products to one it knows
or should know is infringing can be found liable for contributory
trademark infringement. *See Inwood Labs. v. Ives Labs*., 456 U.S.
844, 854; 102 S. Ct. 2182; 72 L. Ed. 2d 606 (1982). Liability has
been extended to defendants supplying services (rather than
products) in cases where defendants exercise "direct control and
monitoring of the instrumentality used by a third party to
infringe the plaintiff's mark."[6] *Tiffany Inc. v. eBay, Inc*., 576
F. Supp. 2d 463, 505 (S.D.N.Y. 2008) (quoting *Lockheed Martin
Corp. v. Network Solutions, Inc*., 194 F.3d 980, 985 (9th Cir.
1999)).

   Defendants allegedly provided services to Mark Gelfman and
Gelfman Inc. by directing, representing, and managing the Gelfman
Show. However, the complaint lacks any allegation that Pototski,
Krassotkine, or Yanis Gelfman exercised control over the name of
the show, the content of the show, or the means by which it was

---

[6]In support of their trademark infringement claim against defendants, plaintiffs cite case law pertaining to liability for printers of infringing materials for the proposition that business people have an affirmative duty to inquire when a customer requests a product that is likely infringing. *See Polo Fashions, Inc. v. Ontario Printers, Inc.*, 601 F.Supp. 402, 403 (D. Ohio 1984). This precedent operates according to the same principles as those stated in *Tiffany Inc.*; a defendant can be held liable when it exercises control over the instrumentality used to infringe.

promoted. There are no facts in the complaint to support a claim of contributory trademark infringement.


*2. Contributory Copyright Infringement*

Plaintiffs argue in their papers that defendants are liable for knowingly assisting in copyright infringement. The complaint fails to make out such a claim.

"To state a claim for contributory copyright infringement, a plaintiff must aver that the defendant, 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 267-68 (S.D.N.Y. 2007) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (modifications in the original)); *see also Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998). To show material contribution, "the participation or contribution must be substantial". *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 473 (S.D.N.Y. 2002) (quotations omitted). "The authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Livnat v. Lavi*, No. 96 Civ. 4967, 1998 U.S. Dist. LEXIS 917, at *3 (S.D.N.Y. Feb. 2, 1998). "Indirect infringement, whether inducement to infringe or

contributory infringement, can only arise in the presence of direct infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp*., 363 F.3d 1263, 1272 (Fed. Cir. 2004) (citations omitted).

As discussed in my previous memorandum denying a motion to dismiss by the Gelfman defendants, plaintiffs have stated a claim for copyright infringement, the predicate for asserting a claim for contributory infringement. *See Kuklachev*, 2009 U.S. Dist. LEXIS 15632, at *70-75. Plaintiffs allege in the complaint that the Gelfman Show copied numerous aspects of the Kuklachev Show, including tricks and poster designs. However, there are no facts alleged indicating that Pototski, Krassotkine, or Yanis Gelfman knew that the use of these tricks and designs was unauthorized, nor have plaintiffs alleged that defendants induced, caused, or materially contributed to the copying of tricks and designs.

*3. False Representation*

Plaintiffs assert in their papers that defendants directly and substantially assisted Mark Gelfman and Gelfman, Inc. in misrepresenting the tricks and features of the Gelfman performances as belonging to the Gelfmans rather than to plaintiffs. Plaintiffs also suggest that defendants were responsible for advertisements that misled the public as to the nature of the show. Section 43(a) imposes liability on a defendant who uses any "false or misleading representation of

fact," which is likely to deceive as to the affiliation or
approval of commercial goods by another person. 15 U.S.C. §
1125(a)(1). The complaint alleges that advertisements for the
show falsely suggested that the Gelfman Show was the same show as
the Kuklachev Show, in part by including photographs of
plaintiffs performing their signature tricks, resulting in
audience confusion. The complaint contains no allegation that
Pototski, Krassotkine, or Yanis Gelfman produced any
advertisements for the Gelfman Show, nor does it allege that
these defendants were aware that the Gelfman Show was not
authorized to include photographs of plaintiffs in its
advertisements.

*4. Employee Liability*

In addition to arguing that defendants are individually
liable for their own actions of contributory infringement,
trademark infringement, and false advertising, plaintiffs argue
that Pototski, Krassotkine, and Yanis Gelfman are personally
liable for the infringing acts of Gelfman Inc. and Mark Gelfman.

In order to hold an officer, employee, or agent personally
liable for the actions of an employer under the Lanham Act, a
plaintiff must demonstrate that the individual is "moving active
conscious force" behind the employer's alleged infringement. *PGC
Prop., LLC v. Wainscott/Sagaponack Prop. Owners, Inc.*, 250

F.Supp.2d 136, 144 (E.D.N.Y. 2003); *see also Cartier v. Aaron Faber, Inc*., 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007). The phrase "moving active conscious force" has not been defined, although it is sufficient to show that the officer "authorized and approved the acts of unfair competition which are the basis of the corporation's liability." *Bambu Sales, Inc. v. Sultana Crackers*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (internal punctuation and quotation marks omitted); *see also Cartier, a Div. of Richemont N. Am., Inc. v. Samo's Sons, Inc*., 2005 U.S. Dist. LEXIS 23395, 2005 WL 2560382, at *10 (S.D.N.Y. Oct. 11, 2005) (finding individual defendant officer personally liable on trademark infringement claims on the basis of his responsibility for making purchasing decisions).

Plaintiffs fall short of this standard of pleading in their complaint, as they allege only that defendants held certain titles in the allegedly infringing production, without alleging that defendants authorized or approved any allegedly infringing actions. In their opposition to the motion, plaintiffs assert that Pototski had control over the contents of the show as the show's director, and that Krassotkine and Yanis Gelfman had control over advertisement and distribution of the show, which suggests that defendants authorized and approved of infringing actions. However, there are no such allegations in the complaint. The complaint fails to establish a basis upon which defendants

can be held liable for the infringement by Mark Gelfman or Gelfman, Inc.


**CONCLUSION**

For the reasons stated herein, the motion by defendants for judgment on the pleadings is granted. Plaintiffs are granted leave to amend the complaint for the limited purpose of alleging additional facts against defendants Yanis Gelfman, Yuri Pototski, and Dmitry Krassotkine. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.


Dated:     Brooklyn, New York
           March 25, 2009


                         By: <u>Charles P. Sifton (electronically signed)</u>
                               United States District Judge